[No. A131301. First Dist., Div. Two. Nov. 14, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
CARL NELSON, Defendant and Appellant.

## COUNSEL

Law Offices of Darren Kessler and Darren J. Kessler for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric D. Share, Michael E. Banister and Masha Dabiza, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LAMBDEN, J.**—Defendant Carl Nelson appeals from a traffic court judgment of guilt for violating Vehicle Code section 23123,[1] which states that persons shall not drive on public roadways using a wireless telephone unless the phone is configured for hands free listening and talking, and used in that manner while driving. (§ 23123, subds. (a), (e).) Defendant was observed using his phone in his car as he paused at a red traffic light while driving in Richmond, California. He argues he was not "driving" because his car was stopped during his phone use, relying on our Supreme Court's determination in *Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753 [280 Cal.Rptr. 745, 809 P.2d 404] (*Mercer*) that the term "drive" as used in section 23152 (prohibiting driving under the influence of alcohol or drugs) requires proof of "volitional movement."

■ However, defendant's circumstances are materially different from those considered by the *Mercer* court, which defined "drive" as it applied to a person found asleep in a vehicle legally parked against the curb of a residential street, albeit with its engine running and lights on; in other words, the vehicle was not at the time being driven on public roadways. Here, defendant used his wireless telephone with his hands while driving on a public roadway at a time at which he paused momentarily at a red light. This situation is not addressed in *Mercer* or other relevant case law. We conclude, pursuant to our application of *Mercer* and black letter rules of statutory interpretation, including our review of the language and legislative history of section 23123, subdivision (a), and our application of " 'reason, practicality, and common sense to the language at hand' " (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1084 [36 Cal.Rptr.3d 650] (*MacIsaac*)), that the Legislature intended section 23123, subdivision (a) to apply to persons driving on our public roadways who, like defendant, may pause momentarily while doing so in order to comply with the rules of the road. Therefore, we hold that defendant violated section 23123, subdivision (a) and affirm the judgment.

## BACKGROUND

On the morning of December 28, 2009, defendant was cited by a police officer for an infraction of section 23123, subdivision (a). Violators are

---

[1] All future references are to the Vehicle Code unless otherwise stated.

subject to a fine. (§ 23123, subd. (b).) Defendant contested his citation, leading to a trial before a Contra Costa County Superior Court traffic commissioner.

According to the traffic commissioner's statement of the evidence, which defendant does not challenge for the purposes of his appeal, the police officer testified that he pulled up on his motorcycle directly by defendant's driver's side door while defendant's car was stopped at a red traffic light in Richmond, and saw defendant sitting in the driver's seat with a flip-type cell phone in the process of dialing the phone and placing it to his ear. Defendant looked at the officer, removed the phone from his ear, and closed it. After the traffic light turned green and defendant drove his vehicle through the intersection, the officer stopped him and advised him he had been on his phone in violation of the law. Defendant objected that he only used his phone while stopped at the light and not while driving, but the officer cited him nonetheless. Defendant testified that he was checking his e-mail and pushing some buttons on his phone, which was in his hand, as he waited for the traffic light to turn green, his car in gear.

Defendant argued to the traffic commissioner that he was not "driving" his vehicle when he used his wireless telephone. He based his argument on our Supreme Court's definition of "driving" in *Mercer, supra*, 53 Cal.3d 753, a case which considered whether or not a man found by police asleep and slumped over the wheel of a car legally parked against a curb of a residential street, its engine running and its lights on, who refused chemical tests, was lawfully arrested without a warrant for violating section 23152, although the man's vehicle did not move in the officer's presence. (*Mercer*, at pp. 756–758.)

Defendant was found guilty of violating section 23123 and ordered to pay a fine and other penalties, totaling $103. The appellate division of the superior court affirmed his conviction. It subsequently granted his request for transfer certification to this court because it thought it necessary to determine "whether the term 'driving' as used in section 23123 requires contemporaneous volitional movement of the motor vehicle as an element of the offense." We granted review of the matter by order filed on March 30, 2011.

## DISCUSSION

Defendant argues in this appeal, as he argued before the traffic commissioner, that section 23123, subdivision (a) does not prohibit hand-held

wireless telephone use while a vehicle is stopped on the public roadways, relying on the *Mercer* court's definition of "driving." The People argue that section 23123 prohibits such use because the statute applies to persons "operating" their vehicles on the public roadways, and that, in the alternative, substantial evidence of such motion was presented at trial in any event. We conclude defendant listened to his hand-held wireless telephone during a fleeting pause at a traffic light "while driving" in Richmond and, therefore, violated section 23123, subdivision (a), as we now explain.

## I. The Meaning of "Drive" and "While Driving" in Section 23123

### A. The Governing Law

Section 23123 first became effective on January 1, 2007. (Stats. 2006, ch. 290, § 4.) Subdivision (a) of section 23123 states: "A person shall not drive a motor vehicle while using a wireless telephone unless that telephone is specifically designed and configured to allow hands-free listening and talking, and is used in that manner while driving." (§ 23123, subd. (a).)

A violation of section 23123, subdivision (a) is an infraction punishable by a base fine of $20 for the first offense and $50 for each subsequent offense. (§ 23123, subd. (b).)

Certain persons are exempt from the mandate in section 23123, subdivision (a).[2] For example, the mandate does not apply "to a person using a wireless telephone for emergency purposes, including, but not limited to, an emergency call to a law enforcement agency, health care provider, fire department, or other emergency services agency or entity" (§ 23123, subd. (c)), "to an emergency services professional using a wireless telephone while operating an authorized emergency vehicle . . . in the course and scope of his or her duties" (§ 23123, subd. (d)), or to a person while driving a motor vehicle on private property (§ 23123, subd. (f)).[3]

---

[2] The version of section 23123 that was operative at the time of defendant's trial expired on July 1, 2011, and was replaced by a version that retains all of the provisions discussed herein. (§ 23123, subds. (a)–(d), (g); former § 23123, subds. (a)–(d), (h); Stats. 2007, ch. 214, § 2.) Accordingly, we refer to the present section 23123 in our discussion even though it became operative after defendant's trial.

[3] Section 23123 is part of a statutory scheme that regulates the use of mobile technologies in motor vehicles. This scheme includes section 23124, which states that notwithstanding section 23123, a person under the age of 18 years "shall not drive a motor vehicle while using a wireless telephone, even if equipped with a hands-free device, or while using a mobile service device." (§ 23124, subds. (a), (b).)

Section 23125 provides that "[a] person may not drive a schoolbus or transit vehicle . . . while using a wireless telephone," subject to certain exemptions. (§ 23125, subds. (a), (b).)

The Vehicle Code does not include definitions for the term "drive" or "while driving,"[4] nor are we aware of any cases discussing the application of such terms to the present circumstances, i.e., a person who engages in an activity that is prohibited "while driving" as he pauses at a traffic light. *Mercer*, as we will discuss, does not. Defendant cites *People v. Howard* (2002) 100 Cal.App.4th 94 [121 Cal.Rptr.2d 892], which, citing *Mercer's* definition of "driving," determined that a vehicle stalled and stopped in the center median of a street was not "proceeding" on a public street and, therefore, defendant was improperly convicted of exhibiting a firearm in violation of Penal Code section 417.3. (*Howard*, at pp. 97–99.) Central to the *Howard* court's ruling was its conclusion that, unlike in the present case, the defendant's vehicle was "fully stopped, inoperative, and incapable of moving in any manner (except, presumably, if pushed)." (*Id.* at p. 99.) Based on this evidence, it rejected the People's argument that the vehicle could have been moved accidentally or if taken out of gear. (*Ibid.*) The court also noted that it had no reason to conclude that " 'proceeding on a public street or highway,' " as used in section 417.3, included "brief and inadvertent movement on the side of a street or highway" (*ibid.*), circumstances that are not relevant to the present case.

In our independent research, we have found two cases that, in discussing the difference between "operate" and "drive," quoted an American Law Reports annotation in which it was indicated that a person would be "operating," rather than "driving," a vehicle during " '*stops* and parking on the highway.' " (*Music v. Department of Motor Vehicles* (1990) 221 Cal.App.3d 841, 849, fn. 7 [270 Cal.Rptr. 692], italics added, cited favorably in *Mercer, supra*, 53 Cal.3d at p. 756; *Padilla v. Meese* (1986) 184 Cal.App.3d 1022, 1028, fn. 1 [229 Cal.Rptr. 310], italics added.) Neither case, nor the quote from the annotation, addressed a driver's fleeting pauses for traffic lights while driving on the public roadways, however. In any event, the discussion of the annotation was dictum in both cases.

Defendant's argument that he was not "driving" is based on our Supreme Court's opinion in *Mercer, supra*, 53 Cal.3d 753, in which the court determined the meaning of the term "drive" as it is used in section 23152, which prohibits driving under the influence. Section 23152 provides in relevant part, "It is unlawful for any person who is under the influence of any alcoholic

---

Also, after the enactment of section 23123, the Legislature enacted a statute prohibiting a person from driving a motor vehicle while using an electronic wireless communications device. (Stats. 2008, ch. 270, § 2.)

Section 23123.5 states, "A person shall not drive a motor vehicle while using an electronic wireless communications device to write, send, or read a text-based communication." (§ 23123.5, subd. (a).)

[4] "Driver" is defined in relevant part as "a person who drives or is in actual physical control of a vehicle" (§ 305), as noted in *Mercer, supra*, 53 Cal.3d at page 762.

beverage or drug . . . to *drive* a vehicle." (§ 23152, subd. (a), italics added; see *Mercer*, at p. 759.) As earlier noted, Mercer was found by police asleep and slumped over the wheel of a car legally parked, its engine running. (*Mercer*, at p. 756.) He refused chemical tests after his warrantless arrest for violation of section 23152. (*Mercer*, at pp. 756–757.) The court extensively analyzed the meaning of the term "drive" to determine if Mercer was lawfully arrested for a violation of section 23152 in the absence of evidence that the arresting officer observed his vehicle move, so as to answer the ultimate question of whether his driver's license could be suspended or revoked by statute because he refused the chemical tests. (*Mercer*, at pp. 757–758.) In doing so, the court drew a distinction between "drive" and "operate."

The *Mercer* court first looked at the language of section 23152. It determined that, "[i]n everyday usage of the phrase, 'to drive a vehicle,' is understood as requiring evidence of volitional movement of a vehicle" based on numerous dictionary definitions for "drive" that required movement. (*Mercer, supra*, 53 Cal.3d at p. 763 & fn. 5.)

Second, the *Mercer* court looked at the use of similar terms in related statutes. It concluded the Legislature intended "drive," as used in section 23152, subdivision (a) to be construed narrowly. (*Mercer, supra*, 53 Cal.3d at p. 763.) The court pointed out that the Legislature employed the use of the disjunctive "or" in statutes such as sections 305, 13353.2, and 12501 to distinguish between a person who drives "or" does such things as "operates" a vehicle, indicating the Legislature "knows how to broaden the scope of coverage when it wants to do so." (*Mercer*, at pp. 763–764.) The court also considered it noteworthy that the first " 'drunk driving' " statute in California made it illegal for an intoxicated person to " 'operate or drive' a vehicle," but that this was later changed to "drive" alone without explanation. (*Id.* at p. 764, fn. 6.)

Third, the *Mercer* court reviewed decades of case law from other states, which held that the word " 'drive,' when used in a drunk driving statute, requires evidence of a defendant's volitional movement of a vehicle." (*Mercer, supra*, 53 Cal.3d. at p. 764.) It also surveyed state statutes around the country that referred to "drive" and were similar to section 23152. (*Mercer*, at pp. 764–768.) The court found that most states distinguished between "drive" and "operate," and required volitional movement for the former. (*Ibid.*) It favorably quoted a South Carolina court's explanation of the difference between the terms as follows: " 'The distinction between these terms is material, for it is generally held that the word "drive," as used in statutes of this kind, usually denotes movement of the vehicle in some direction, whereas the word "operate" has a broader meaning so as to include not only

the motion of the vehicle, but also acts which engage the machinery of the vehicle that, alone or in sequence, will set in motion the motive power of the vehicle.' " (*Mercer, supra*, 53 Cal.3d at pp. 764–765.)

The *Mercer* court concluded from its analysis of these factors that a violation of section 23152 required "proof of volitional movement of a vehicle." (*Mercer, supra*, 53 Cal.3d at p. 768.) The court rejected the idea that it should ignore these factors "to effectuate what is asserted to be a better result in terms of social policy" because it "evinces a fundamental misunderstanding about the nature of statutory construction and the role of courts in our system of government." (*Id.* at pp. 768–769.) The court also "recognize[d] there are legitimate policy reasons that would support a decision to retain the current narrow statutory scheme, including the policy of encouraging intoxicated drivers to stop driving and safely park their cars until they became sober." (*Id.* at p. 769.)

A number of appellate courts have followed *Mercer*'s guidance in interpreting the term "drive," including this court. In *Isaac v. Department of Motor Vehicles* (2007) 155 Cal.App.4th 851 [66 Cal.Rptr.3d 372], we acknowledged "drive" was not substantially the same as "operate" in the course of determining whether an out-of-state conviction for "operating" a vehicle while under the influence involved "driving." We stated: "*Mercer* explains that California is among the minority of states that prohibit simply 'driving' a vehicle while intoxicated; most states prohibit ' "driving or operating" or simply "operating" a vehicle . . . , or "driving or being in [or 'having'] actual physical control" of a vehicle.' [Citation.] The overwhelming majority of those statutes have been interpreted as ascribing to the words 'being in actual physical control of' or 'operating' a vehicle 'a broad scope not limited to or dependent on volitional movement of a vehicle. In fact, most cases uphold a finding of "operation" or "being in actual physical control" even when . . . the arrestee was found asleep, slumped over the steering wheel of an operable car with its [motor] running.' " (*Id.* at p. 861.)

The *Mercer* court held that the defendant's warrantless arrest was invalid for reasons that do not apply to the present case, although its conclusion was based on its definition of "driving" as requiring movement. The court held that, since the defendant was subjected to a warrantless arrest for the misdemeanor violation of driving under the influence, Penal Code section 836, subdivision (a)(1) required that the arresting officer witness the defendant's

vehicle move, which he did not. (*Mercer, supra*, 53 Cal.3d at p. 769.)[5] Defendant's use of a wireless telephone in the present case does not raise any arrest issues.

## B. *Defendant's Arguments*

Defendant argues the *Mercer* court's conclusion that the term "drive" requires evidence of volitional movement means the trial court necessarily was in error because defendant was in a vehicle that was stopped at a red traffic light when he used his wireless telephone. He argues further that, if the trial court were correct, section 23123 "would prohibit the use of a cellular telephone to make a call even in situations where the failure to make the call would clearly be contrary to the interests of public safety and defy common sense." It would, he contends, be a violation to use a hand-held wireless telephone "stopped in traffic behind a major accident that was taking hours to clear," to "call to a child requesting him to come through the rain from inside the school to a parent temporarily stopped, with foot on brake, in a passenger loading zone," or while "waiting for a train to pass or delayed for hours due [to] a road spill." Defendant further contends, "[t]here is no conceivable risk of one using the cell phone in the foregoing circumstances while there are sensible reasons for being able to do so consistent with public policy concerns." Defendant argues the trial court's reasoning is particularly "absurd" when a person sitting in the driver's seat at a traffic light "may lawfully put on make-up, eat a messy sandwich, or focus entirely on changing radio stations or music CDs in the car stereo, yet—under the result below—that same person could not lawfully push one pre-programmed speed dial button on a cell phone to check his or her voicemail."

Defendant further argues that rules of statutory construction support the conclusion that the trial court erred. He correctly points out that "similar statutes should be construed in light of one another." (*Ziesmer v. Superior Court* (2003) 107 Cal.App.4th 360, 366 [132 Cal.Rptr.2d 130] (*Ziesmer*).) Furthermore, "[w]hen legislation has been judicially construed and a subsequent statute on the same or an analogous subject is framed in the identical language, it will ordinarily be presumed that the [framers] intended that the language as used in the later enactment would be given a like interpretation." (*Yeroushalmi v. Miramar Sheraton* (2001) 88 Cal.App.4th 738, 748–49 [106 Cal.Rptr.2d 332].) Defendant asserts that section 23123 (regarding wireless telephones) and section 23152 (regarding driving under the influence) are

---

[5] After *Mercer*, the Legislature enacted section 40300.5, subdivision (e), which allows for the warrantless arrest for a misdemeanor driving while under the influence violation *not* committed in the arresting officer's presence, in circumstances in which the person otherwise might destroy or conceal evidence. (*Troppman v. Valverde* (2007) 40 Cal.4th 1121, 1136, fn. 11 [57 Cal.Rptr.3d 306, 156 P.3d 328].)

analogous because they "are both aimed at reducing accidents from motorists traveling on the streets and highways of the state, with section [23123] focusing on impairment due to temporary distractions, and section [23152] focusing on impairment due to intoxication. It thus is appropriate to apply the *Mercer* court's construction of the term 'driving'—volitional movement of the vehicle in question—to the term 'driving' in section [23123]."

Defendant acknowledges that the *Mercer* court stated that its ruling did not disturb the established rule that, when challenging *a conviction* (as defendant does here) for driving under the influence, circumstantial evidence of unwitnessed volitional movement may be considered. (*Mercer, supra*, 53 Cal.3d at pp. 769–770.) For example, in *People v. Wilson* (1985) 176 Cal.App.3d Supp. 1 [222 Cal.Rptr. 540] (*Wilson*), the appellate court affirmed the conviction for driving under the influence of a man found behind the wheel and asleep in a parked car, which was parked at an angle on a shoulder and partially in a roadway lane, in park with its engine and air-conditioner running. (*Id.* at pp. Supp. 3–4.) The appellate court concluded, " 'there was ample evidence from which the jury could have inferred that the defendant had been driving his vehicle on the public highway at a time when he was intoxicated,' " since it could be inferred that he placed himself in the position in which he was found by driving there. (*Id.* at p. Supp. 7.)

Defendant argues that such an inference cannot be made in his case, however, "because cellular phone usage is a fleeting action; it does not have residual effects that, like intoxication, last for hours. One can [use] a cell phone while stopped at a red light (because it is safe to do so) without having used it while moving the vehicle to the red light and without using it when one resumes one's voyage after the traffic light turns green. Thus, the fact that one is using a cellular phone while stationary simply cannot give rise to a reasonable inference that one was using the phone before or after the period that one was stopped at a red light."

Finally, defendant argues that, in the event we find section 23123 ambiguous, we must follow the well-settled rule that "where a penal statute is ambiguous and susceptible to two reasonable interpretations, we must adopt the construction that is most favorable to defendant." (*Ziesmer, supra*, 107 Cal.App.4th at pp. 366–367.)

## C. *The People's Arguments*

The People argue that the repeated use of the term "operate" in the legislative history for section 23123 indicates that the Legislature intended to regulate the "operation" of motor vehicles, not just the "driving" of them. Specifically, the People point to the Legislature's findings and declarations

for section 23123, which twice refer to the "operation" of motor vehicles (Stats. 2006, ch. 290, § 2(d) & (e)), as showing "the Legislature's intent to prohibit use of a hand-held cell phone *while operating* a motor vehicle in a roadway. That declaration of intent does not include any requirement that 'operating' a motor vehicle requires that the vehicle be *moving* at the time the cell phone is used." The People also cite the opposition's statement that the bill enacting section 23123 penalized drivers who "are *operating* their vehicles in a safe and responsible manner." (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 1613 (2005–2006 Reg. Sess.) as amended Aug. 29, 2006, p. 8, italics added (hereinafter, Senate Bill Analysis).)[6] The People conclude, "all sides in the debate understood the focus of the bill to be reducing the public safety threat posed by a driver using a hand-held cell phone while 'operating' a motor vehicle." Furthermore, "the Legislature did not intend, either expressly or impliedly, to require that the vehicle be *moving* at the time the motorist was using his or her cell phone." The People argue that the circumstances involved in the present case "show that [defendant] posed the type of threat to public safety envisioned by the Legislature in enacting section 23123."

The People further argue that defendant's reliance on *Mercer* is unavailing because the court's ruling was in the context of the particular prohibition against driving under the influence contained in section 23152, and its holding narrowly addressed only whether the state may suspend or revoke a driver's license for failure to submit to chemical testing in the absence of evidence of observed volitional movement of the vehicle. Therefore, the People contend, "*Mercer*'s analysis of the term 'driving' was limited to the context of propriety of a traffic stop for DUI in support of a subsequent revocation of a driver's license. Its limited analysis should not be read as controlling in *all* contexts, including the context of a traffic citation for the infraction of using a cell phone while operating a fully engaged motor vehicle in a roadway. This is especially true here where the legislative history establishes that the Legislature intended to address a problem greater than mere volitional movement of a car, i.e., distracted operation of a motor vehicle in a roadway."

D. *Analysis*

We find merit and fault with the arguments made by both defendant and the People regarding the circumstances before us. Defendant properly argues, based on *Mercer*, that the term "drive" requires proof of volitional movement.

---

[6] We construe the People's reference to the Senate Bill Analysis as a request for judicial notice of it. Having notified the parties pursuant to Evidence Code section 459 of our intention to take judicial notice of the analysis pursuant to Evidence Code section 452, we do so. (See *In re Danny H.* (2002) 104 Cal.App.4th 92, 100, fn. 16 [128 Cal.Rptr.2d 222].)

However, he presumes this decides the issue. It does not. *Mercer* involved a man found asleep at the wheel of a legally parked car. Given those particular circumstances, our Supreme Court did not need to, and did not, answer the question posed to us by the appellate division of the superior court, that being whether the movement required by "driving" must always be *contemporaneous* with the prohibited activity when the circumstances involve a vehicle driver paused momentarily while driving on a public roadway in order to comply with the rules of the road. Therefore, we employ *Mercer*'s analytical framework to review the language of section 23123 and similar statutes, section 23123's legislative history, and the consequences of defendant's interpretation to determine the answer to the question.

 The People properly argue that the use of the term "operating" in section 23123's legislative history is significant; and, in fact, the term is similarly used in section 23123 itself, which is not the case in section 23152. However, the People ask us to disregard altogether the Legislature's use of the terms "drive" and "while driving" in section 23123, subdivision (a), arguing that the Legislature actually intended "operate" and "while operating." We are not persuaded that we should do so. "Identification of the laudable purpose of a statute alone is insufficient to construe the language of the statute. 'To reason from the evils against which the statute is aimed in order to determine the scope of the statute while ignoring the language itself . . . is to elevate substance over necessary form. The language . . . confines and channels its purpose.' " (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 176, fn. 9 [96 Cal.Rptr.2d 518, 999 P.2d 706].)

However, it is unnecessary for us to further address the People's broader argument because it asks us to decide too much. Neither party focuses sufficiently on the precise circumstances before us. We are not reviewing whether all drivers "operating" their motor vehicles on the public roadways are prohibited from using hand-held wireless telephones, nor are we reviewing the various hypothetical circumstances referred to by defendant, such as whether a hand-held wireless phone may be used by a driver stopped behind a major accident that takes hours to clear. We only review the actions of defendant who, according to the traffic court, was cited for a violation of section 23123, subdivision (a) after a police officer observed him in the driver's seat of a car paused briefly at a red traffic light dialing a wireless telephone and placing it to his ear, and then observed him remove the phone from his ear, close it, and drive through the intersection when the traffic light turned green. Defendant does not contest these findings, nor contend that he did anything other than drive his car on the public roadways to the traffic light and stop while the light was red.

Based on these facts, the only question that we must answer is this: Did defendant, while driving along Richmond's public roadways, violate section 23123, subdivision (a) when he used his hands to listen to a wireless telephone as he fleetingly[7] paused as required at a red traffic light? Again, while the *Mercer* court concluded the term "drive" requires "proof of volitional movement of a vehicle" (*Mercer, supra,* 53 Cal.3d at p. 768) it did not answer this question because the police came upon the defendant as he slept in a parked car (*id.* at pp. 756–757). Also, the parties do not cite any "driving under the influence" cases that address these circumstances, and we are not aware of any.[8] We conclude defendant violated section 23123, subdivision (a), based on its language, the use of the terms "drive" and "while driving" in similar Vehicle Code statutes and in case law, section 23123's legislative history, and the significant and numerous public safety hazards that likely would result from defendant's interpretation. We now explain how we reach this conclusion.

■ "In construing statutes, we aim 'to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' [Citations.] We look first to the words of the statute, 'because the statutory language is generally the most reliable indicator of legislative intent.' [Citations.] [¶] When the statutory text is ambiguous, or it otherwise fails to resolve the question of its intended meaning, courts look to the statute's legislative history and the historical circumstances behind its enactment. [Citation.] Finally, the court may consider the likely effects of a proposed interpretation because " '[w]here uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation." ' " (*Klein v. United States of America* (2010) 50 Cal.4th 68, 77 [112 Cal.Rptr.3d 722, 235 P.3d 42].) "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

1. *The Words of Section 23123*

■ "In the first step of the interpretive process we look to the words of the statute themselves. [Citations.] The Legislature's chosen language is the

---

[7] As we have mentioned, defendant characterizes the time a driver uses a wireless telephone as "fleeting," including during the time he or she may be paused at a red traffic light. Since these times could well be of the same or similar duration, we describe defendant's pause at the red traffic light as "fleeting" as well.

[8] This is not surprising because a person who becomes "under the influence" remains in that state for some period of time. Thus, in *Wilson,* the court found "ample evidence" of driving under the influence, although the defendant was found asleep in a parked car. (*Wilson, supra,* 176 Cal.App.3d at pp. Supp. 3–4, 7–8 [noting the evidence that defendant had been drinking earlier in the evening and, later, performed poorly in field sobriety tests].)

most reliable indicator of its intent because " 'it is the language of the statute itself that has successfully braved the legislative gauntlet.' " [Citation.] We give the words of the statute 'a plain and commonsense meaning' unless the statute specifically defines the words to give them a special meaning. [Citations.] If the statutory language is clear and unambiguous, our task is at an end, for there is no need for judicial construction. . . .

"Nevertheless, the 'plain meaning' rule does not prevent a court from determining whether the literal meaning of the statute comports with its purpose. [Citations.] Thus, although the words used by the Legislature are the most useful guide to its intent, we do not view the language of the statute in isolation. [Citation.] Rather, we construe the words of the statute in context, keeping in mind the statutory purpose. [Citation.] We will not follow the plain meaning of the statute 'when to do so would "frustrate[] the manifest purposes of the legislation as a whole or [lead] to absurd results." ' [Citation.] Instead, we will ' "interpret legislation reasonably and . . . attempt to give effect to the apparent purpose of the statute." ' " (*MacIsaac, supra*, 134 Cal.App.4th at pp. 1082–1083, citation omitted.)

The language of section 23123, subdivision (a) does not answer the question before us either, because of the ambiguity posed by the terms "drive" and "while driving" with regard to a driver's fleeting pauses as he or she drives on public roadways. An ambiguity exists when words in a statute "are 'capable of being construed in two different ways by reasonably well informed people.' " (*People v. Bostick* (1996) 46 Cal.App.4th 287, 295 [53 Cal.Rptr.2d 760] (conc. opn. of Kline, P. J.).) Our independent research indicates section 23123, subdivision (a) may be understood to include such fleeting stops because it is not uncommon to use terms like "drive" and "while driving" to refer to a person driving a motor vehicle along the public roadways, regardless of whether he or she stops fleetingly for a red traffic light or other impediments to movement that are beyond his or her control.

Such usage can be readily found in our case law, as indicated by our independent research. For example, in discussing the law of unreasonable searches and seizures, our Supreme Court has recognized the legitimacy of traffic stops because, " ' "in light of the pervasive regulation of vehicles capable of traveling on the public highways, individuals generally have a reduced expectation of privacy *while driving* a vehicle on public thoroughfares." ' " (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 146 [112 Cal.Rptr.3d 746, 235 P.3d 62], italics added.) Although the context of these cases is unrelated to the present circumstances, it nonetheless would be absurd to suggest that the court did not intend this principle to apply to vehicles driving on our thoroughfares that are briefly paused for traffic lights. Elsewhere, being "stopped by a traffic signal" has been characterized as

"inherent in city *driving*." (*People v. Cowman* (1963) 223 Cal.App.2d 109, 116 [35 Cal.Rptr. 528], italics added [conduct of officers in stopping the defendant's vehicle did not violate his right to privacy or constitutional rights].)

■ Defendant correctly points out that "similar statutes should be construed in light of one another" (*Ziesmer, supra,* 107 Cal.App.4th at p. 366) and that it is " 'ordinarily . . . presumed' " that statutory language, once judicially construed, will be given a like interpretation in a latter statute on the same or analogous subject (*Yeroushalmi v. Miramar Sheraton, supra,* 88 Cal.App.4th at pp. 748–749). However, the *Mercer* court did not address fleeting stops made while driving, and section 23123 contains the term "while driving," which does not appear in section 23152. The Legislature has employed this precise term elsewhere in the Vehicle Code, in similar statutes which, as defendant contended regarding sections 23123 and 23152, are "aimed at reducing accidents from motorists traveling on the streets and highways of the state." Its use cannot be squared with defendant's argument that the term requires movement contemporaneous with the prohibited activity at all times.

Specifically, section 22110, regarding methods of signaling, provides, "In the event the signal lamps become inoperable *while driving,* hand and arm signals shall be used in the manner required in this chapter." (§ 22110, subd. (b), italics added.) It would be patently absurd to suggest that a person whose signals stop working as he or she pauses at a red light and waits to turn left, has no obligation to use hand and arm signals to indicate the intention to turn because the signals stopped working when the vehicle was not moving.

Similarly, in section 13353, our state's implied consent law, states: "If a person on more than one occasion in separate incidents refuses the officer's request to submit to, or fails to complete, a chemical test or tests pursuant to Section 23612 *while driving* a motor vehicle, upon the receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23140, 23152, or 23153, the department shall disqualify the person from operating a commercial motor vehicle for the rest of his or her lifetime." (§ 13353, subd. (b), italics added.)

Obviously, this provision refers to drivers who refuse an officer's request to submit to, or fail to complete, the requisite chemical test during a traffic stop, when the vehicle is motionless. Otherwise, it would apply to virtually no one, an absurd result.

■ The Legislature uses the term "while driving" in other Vehicle Code sections where the intended scope of the term is less apparent. (See, e.g.,

§§ 12817, 14601.4, subd. (a), 23112.7, subd. (c)(1).) We do not make a comprehensive survey of these uses in the Vehicle Code or suggest one meaning for all of these uses. We merely point out that, based on language in statutes addressing similar concerns, the Legislature's use of the term "while driving" does not plainly indicate the intention to exempt from section 23123, subdivision (a)'s ambit drivers listening to hand-held wireless telephones while fleetingly paused at a red traffic light.

Section 23123 contains a further ambiguity regarding the Legislature's intended scope for "drive" and "while driving" that distinguishes it from section 23512 and the analysis in *Mercer*. In *Mercer*, the Supreme Court construed "drive" narrowly in part because section 23512 referred to "drive," *not* operate (which does not require volitional movement of the vehicle); "operate" had been removed years before from the original "drunk driving" statute, and the Legislature distinguished between the two terms in other statutes by its use of the disjunctive "or." (*Mercer, supra*, 53 Cal.3d at pp. 763–764 & fn. 5.) Here, section 23123, subdivision (a) mandates that a person shall not "drive" a vehicle while using a wireless telephone unless certain conditions are met. However, section 23123, subdivision (d) expressly exempts from this mandate "an emergency services professional using a wireless telephone while *operating* an authorized emergency vehicle . . . in the course and scope of his or her duties." (§ 23123, subd. (d), italics added.) Applying *Mercer*'s definitions for "drive" and "operate," this exemption is broader than the mandate, for no apparent reason. It suggests the Legislature used the terms "drive" and "operate" interchangeably in the body of the statute itself. Given the broader meaning of the term "operate," this language suggests the Legislature was not concerned with "drive" requiring proof of contemporaneous volitional movement of the vehicle at all times.

In short, the *Mercer* court determined that "drive" requires proof of volitional movement, but did not address the present circumstances, and narrowly construed "drive" for reasons that do not apply here. Using *Mercer*'s analytical framework as our guide, we conclude that section 23123, subdivision (a) does not contain clear and unambiguous language that exempts defendant from its ambit, although it refers to "drive" and "while driving." Identical language in other Vehicle Code provisions with similar concerns, case law discussion, and section 23123's reference to "operation" in defining an exemption for emergency vehicle operators, suggest we should construe the meaning of "drive" and "while driving" so as to apply section 23123, subdivision (a) to the circumstances before us. Doing so would be consistent with the definition of "drive" in *Mercer* because there was proof of volitional movement, i.e., defendant used his wireless telephone during a fleeting pause at a traffic light "while driving" on public roadways in Richmond. Given section 23123, subdivision (a)'s ambiguity on the issue, we now examine its legislative history as well.

2. *Section 23123 Legislative History*

"When the plain meaning of the statute's text does not resolve the interpretive question, we must proceed to the second step of the inquiry. . . . We may . . . look to . . . the statute's legislative history . . . to assist us in our interpretation." (*MacIsaac, supra,* 134 Cal.App.4th at p. 1083, citations omitted.) Legislative history can be very instructive. For example, in *People v. Meyer* (1985) 169 Cal.App.3d 496 [215 Cal.Rptr. 352], the court reviewed the conviction of an individual found to have violated Health and Safety Code section 11104, which prohibited an individual from furnishing substances to a person who, in the language of the statute, "will use" them to unlawfully manufacture a controlled substance, such as methamphetamine. (See *Meyer,* at p. 502.) The defendant argued he did not violate the statute because he sold a substance to an undercover officer, who obviously was not someone who "will use" the substance to unlawfully manufacture a controlled substance, and the People offered another interpretation of the term. (*Id.* at pp. 501–502.) The court concluded it was "unnecessary to resolve this battle of dictionary definitions because it misses the point of the statute. It is obvious from the Legislative Counsel's Digest that the focus of the statute is not the conduct of the recipient of the designated chemical but, rather, the knowledge or intent with which the supplier furnished that substance." (*Meyer,* at p. 502.)

Similarly, here, section 23123's legislative history is instructive. The Senate Bill Analysis indicates that the Legislature weighed the safety benefits and hazards of allowing drivers to use wireless telephones in motor vehicles. It distinguished sharply between hands free and hand-held uses, seeking to allow the former while restricting the latter.

As the People point out, in section 2 of the legislation enacting section 23123, the Legislature made certain findings and declarations. These first state that "[t]here are significant safety benefits associated with the availability of wireless communication technologies . . . ," and that the availability of wireless telephones "in motor vehicles allows motorists to report accidents, fires, naturally occurring life-threatening situations, including, but not limited to, rock slides and fallen trees, other dangerous road conditions, road rage, dangerous driving, criminal behavior, including drunk driving, and stranded motorist situations." (Stats. 2006, ch. 290, § 2(a) & (c), p. 2366.) These are followed, however, by the Legislature's findings and declarations that "[t]here is growing public concern regarding the safety implications of the widespread practice of using *hand-held* wireless telephones while *operating* motor vehicles," and that "[i]t is in the best interests of the health and welfare of the citizens of the state to enact one uniform motor vehicle wireless telephone use law that establishes statewide safety guidelines for use of wireless

telephones while *operating* a motor vehicle." (Stats. 2006, ch. 290, § 2(d) & (e), p. 2366, italics added.) Read together, these findings and declarations indicate the Legislature enacted section 23123 out of growing concerns about drivers' uses of hand-held wireless telephones in the *operation* of vehicles on our public roadways, a broader concern than that argued by defendant.

Other parts of the Senate Bill Analysis also suggest the Legislature intended to prohibit hand-held wireless telephone use beyond the narrow parameters argued by defendant. Its introductory digest states: "This bill prohibits, beginning July 1, 2008, a driver from using a wireless phone while *operating* a vehicle, unless the phone is specifically designed and configured to allow hands-free operation and is used in that manner . . . ." (Sen. Bill Analysis, *supra*, at p. 2, italics added.) The analysis refers elsewhere to "an infraction for *driving* a motor vehicle while using a wireless telephone." (*Ibid.*, italics added.) This inconsistent explanation of the same provision, in the same analysis, is another example of the Legislature's interchangeable use of "drive" and "operate" in the course of enacting section 23123, and supports a broader construction of the term "drive," given the expansive definition of "operation" in *Mercer*.

The Senate Bill Analysis includes other indications that the Legislature was concerned with restricting drivers' use of hand-held wireless telephones on public roadways, and not only for those times when drivers are moving motor vehicles. It summarizes a 2003 California Highway Patrol report required by the Legislature that recommended giving "serious consideration to requiring use of hands-free cell phones in motor vehicles" without limitation. (Sen. Bill Analysis, *supra*, at p. 5.) As the People point out, the analysis also summarizes the opposition's argument "that [the law] unfairly penalizes drivers who are using a hand-held cell phone regardless of whether or not those drivers are *operating* their vehicle in a safe and responsible manner." (Sen. Bill Analysis, *supra*, at pp. 7–8, italics added.) These arguments do not limit their concerns to the use of a wireless telephone only when a vehicle is in motion.

We conclude from the legislative history that the Legislature distinguished between hands free and hand-held use of wireless telephones by persons driving and operating motor vehicles on our public roadways. It saw benefits in the former, but enacted section 23123 because of "the safety implications of the widespread practice of using hand-held wireless telephones while operating motor vehicles." (Stats. 2006, ch. 290, § 2(d), p. 2366.) The findings and declarations, the interchangeable use of "drive" and "operate" in the legislative history, and other statements in the history indicate the Legislature was generally concerned about the use of hand-held wireless telephones in motor vehicles on our public roadways, and not just about such use when the vehicles

are in motion. In short, the legislative history strongly supports the conclusion that the Legislature intended section 23123 to apply to the circumstances before us.

### 3. Possible Consequences

■■■ To the extent any ambiguity remains, we "cautiously take the third and final step in the interpretive process. [Citation.] In this phase of the process, we apply 'reason, practicality, and common sense to the language at hand.' [Citation.] Where an uncertainty exists, we must consider the consequences that will flow from a particular interpretation. [Citation.] Thus, '[i]n determining what the Legislature intended we are bound to consider not only the words used, but also other matters, "such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy and contemporaneous construction." [Citation.]' [Citation.] These 'other matters' can serve as important guides, because our search for the statute's meaning is not merely an abstract exercise in semantics. To the contrary, courts seek to ascertain the intent of the Legislature for a reason—to *effectuate the purpose* of the law.' " (*MacIsaac, supra*, 134 Cal.App.4th at p. 1084.)

Defendant's narrow interpretation of "drive" and "while driving" in section 23123, subdivision (a) would likely result in significant and numerous public safety hazards on public roadways throughout the state. Unlike the *Mercer* court's recognition of legitimate policy reasons to retain the narrow statutory scheme for driving under the influence, such as allowing intoxicated drivers to park their cars until they became sober (*Mercer, supra*, 53 Cal.3d at p. 769), neither the Legislature nor we have found any legitimate policy reasons for allowing drivers to use *hand-held* wireless telephones "while driving" on our public roadways, whether or not momentarily paused. As defendant acknowledges, wireless telephones can be used fleetingly (and the same can be said about the electronic wireless communications devices regulated by § 23123.5). Were we to adopt defendant's interpretation, we would open the door to millions of people across our state repeatedly picking up their phones and devices to place phone calls and check voice mail (or text-based messages) every day while driving whenever they are paused momentarily in traffic, their car in gear and held still only by their foot on the brake, however short the pause in the vehicle's movement. This could include fleeting pauses in stop-and-go traffic, at traffic lights and stop signs, as pedestrians cross, as vehicles ahead navigate around a double-parked vehicle, and many other circumstances.

We would also open the door to innumerable phone calls to and from drivers that commence during such fleeting pauses and are difficult to end

quickly when traffic resumes—because, for example, of an employer or client to please on the other end of the call, an important voice mail message to listen to or finish, or an unexpected wait on hold encountered. Notably, the record here suggests defendant ended his use of his wireless phone to listen to messages when he saw the police officer by the side of his car, not because the light was about to turn green.

Defendant contends it is safe to use a hand-held device in circumstances such as his because the vehicle is stopped. We disagree. Drivers paused in the midst of traffic moving all around them (behind them, in adjacent lanes, in the roadway in front of them) would likely create hazards to themselves and public safety by their distracted use of their hands on their phones and devices, and would likely cause further traffic delays, whether it be because of a poor response to traffic issues that arise (including if they are hit by another vehicle), distracted drivers' feet letting up on brakes, the failure to promptly move as required by the traffic laws, the inability to resist the temptation to continue their fleeting use of their wireless telephone as they begin moving again, or innumerable other reasons. Construing section 23123 as applying to defendant's circumstances is most consistent with the Legislature's concerns about the public safety hazards caused by drivers' hand-held use of wireless telephones while on the public roadways, and with common sense.

▪ Defendant argues that we must construe section 23123 narrowly because "where a penal statute is ambiguous and susceptible to two reasonable interpretations, we must adopt the construction that is most favorable to defendant." (*Ziesmer, supra,* 107 Cal.App.4th at p. 366.) The precise rule, as stated by our Supreme Court, is that, "when a statute defining a crime or punishment is susceptible of two reasonable interpretations, the appellate court should *ordinarily* adopt that interpretation more favorable to the defendant." (*People v. Avery* (2002) 27 Cal.4th 49, 57 [115 Cal.Rptr.2d 403, 38 P.3d 1], italics added.) This rule does not apply here because of our conclusion that section 23123's language, the legislative history, and the consequences of the differing interpretations indicate the Legislature did not intend to limit section 23123 as argued by defendant. "[A]lthough true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent." (*Avery,* at p. 58.) We have so discerned and, therefore, need not adopt defendant's interpretation although a penal statute is at issue.

Defendant also argues that construing section 23123 to apply to him would lead to absurd results, prohibiting others with good reasons to use their wireless telephones in safe circumstances, such as drivers stopped in traffic

for hours waiting for an accident to clear. His arguments are unpersuasive for two reasons. First, we have determined section 23123's application only regarding defendant's circumstances, and not regarding the hypothetical examples he discusses. Second, defendant ignores that section 23123 contains certain exemptions, including for use of hand-held wireless telephones for emergency purposes (§ 23123, subds. (c)–(e)), plainly indicates a person *may* drive using a wireless telephone provided that it is configured for hands free listening and talking, and used in that manner while driving (§ 23123, subd. (a)), and does not prevent a driver from pulling over to the side of the road and parking in order to use a hand-held wireless phone.

As for defendant's argument that the trial court's reasoning is "absurd" when a person sitting in the driver's seat at a traffic light may lawfully do a variety of activities at least as distracting as checking voice mail messages, it is not our place to tell the Legislature what driving activities to regulate. (See *Mercer, supra,* 53 Cal.3d at pp. 768–769 [referring to the nature of statutory construction and the role of courts].) Drivers engage in a variety of activities while driving, including when their vehicles are in motion, which the Legislature has not prohibited. These matters are not relevant to the Legislature's stated concern about the "the safety implications of the widespread practice of using hand-held wireless telephones while operating motor vehicles" (Stats. 2006, ch. 290, § 2(d)), and its decision to enact legislation regarding the matter.

In conclusion, the language of section 23123 and similar statutes, section 23123's legislative history, and the significant and numerous public safety hazards that likely would result from defendant's interpretation indicate that the Legislature intended that section 23123 apply to defendant's circumstances. Our conclusion is consistent with *Mercer* because there was proof of volitional movement of defendant's motor vehicle, since defendant moved it immediately before and after his fleeting pause at the red traffic light. Therefore, we conclude defendant violated section 23123, subdivision (a) because there was substantial evidence that he listened to a hand-held wireless telephone during his fleeting pause at a traffic light "while driving" on public roadways in Richmond.

## II. *The People's Alternative Argument*

Alternatively, the People argue that even if the term "driving" as used in section 23123 requires volitional movement contemporaneous with the prohibited activity, there was substantial, if circumstantial, evidence from which it should be inferred that defendant "was using his phone only moments before stopping at the red light." This evidence includes that defendant was already operating his phone when the officer observed him using his wireless

phone, his car was in gear and its motor was running, defendant's foot was on the brake to prevent the car from entering the intersection, and he hastily terminated his use of his phone when he saw the police officer, suggesting he knew he was engaged in prohibited conduct. We need not address this argument in light of our conclusions above.

## DISPOSITION

The trial court's judgment is affirmed.

Kline, P. J., concurred.

**RICHMAN J.,** Concurring.—I concur in the court's opinion. I write separately, however, to say that the scholarly analysis of legislative history and the lengthy discussion of cases are, for me, not necessary to resolution of this appeal, which I would decide this way.

Vehicle Code section 23123 states that a person shall not drive on public roadways using a wireless telephone unless the phone is configured for hands-free listening and talking and "is used in that manner while driving." (§ 23123, subd. (a).) Found guilty under that section, defendant Carl Nelson argues he was not "driving" because he was using the phone while his car was stopped at a red light, an argument premised primarily on *Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753 [280 Cal.Rptr. 745, 809 P.2d 404] (*Mercer*). I find *Mercer* easily distinguishable, and hold that properly interpreted—giving its words a " ' "plain and commonsense meaning" ' " (*Brown v. Valverde* (2010) 183 Cal.App.4th 1531, 1546–1547 [108 Cal.Rptr.3d 429])—section 23123, subdivision (a) applies to persons driving on public roadways who stop briefly while doing so. Or, to put it bluntly, that "driving" includes "stopping."

The Supreme Court in *Mercer* described the question before it this way: "We now turn to the essential question posed in this case, namely, whether an officer may make a 'lawful arrest' for 'drunk driving' in violation of section 23152(a), if the arrestee's vehicle is lawfully parked and the officer has not observed the vehicle move." (*Mercer, supra*, 53 Cal.3d at p. 761.) Defendant was not parked, lawfully or otherwise. *Mercer* has no application.

Any mom or dad driving kids to school can expect to stop while parents in cars in front of them are unloading their kids. A shopper driving to a store near Lake Merritt in Oakland may have to stop while a gaggle of geese crosses the street. A couple going for a Sunday drive in west Marin County

may have to stop for a cattle crossing. And, of course, all of us are expected to stop for red lights, stop signs, crossing trains, and funeral processions. In short, all drivers may, and sometimes must, stop. But they do so while "driving." Just like defendant.

Appellant's petition for review by the Supreme Court was denied February 29, 2012, S198921.