[No. D060320. Fourth Dist., Div. One. Feb. 22, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
GABRIEL ANTHONY CARDWELL, Defendant and Appellant.

COUNSEL

Stephen S. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Peter Quon, Jr., and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BENKE, Acting P. J.**—A jury convicted Gabriel Anthony Cardwell of burglary of a Best Buy store by use of an acetylene torch (Pen. Code,[1] § 464; count 1), grand theft (§ 487, subd. (a); count 2) and attempting to deter an

---

[1] All statutory references herein are to the Penal Code.

officer by threat or violence (§ 69; count 3). Cardwell subsequently admitted a strike prior (§ 667, subds. (c), (e)(1)) and a prison prior (§ 667.5, subd. (b)). The trial court sentenced Cardwell to state prison for 16 years four months.

On appeal, Cardwell claims (1) there was insufficient evidence to support his burglary conviction on count 1 because he did not open or attempt to open, within the meaning of section 464, a "vault, safe, *or other secure place*" (italics added) using an acetylene torch; (2) the trial court erred in failing sua sponte to instruct on the meaning of the words "other secure place" in section 464; (3) the trial court erred in failing to stay his concurrent sentence on count 2, grand theft, pursuant to section 654 because the grand theft and burglary convictions constituted a single course of conduct; and (4) he should have been awarded six additional days of conduct credit pursuant to section 4019.

As we explain, Cardwell's burglary conviction must be reversed because section 464 unambiguously requires a defendant first be inside "any building" before using an acetylene torch (or similar device, as provided in the statute) to open or attempt to open a "vault, safe, or other secure place" as provided in section 464.

In light of our conclusion on count 1 and the People's agreement with Cardwell that counts 1 and 2 constituted a single course of conduct, *if*, on remand, Cardwell is convicted for breaking into the Best Buy store, then the trial court should determine which count provides the "longest potential term of imprisonment" under section 654 and sentence Cardwell accordingly. In (re)calculating Cardwell's sentence, the trial court should award Cardwell six additional days of conduct credit pursuant to section 4019, amend Cardwell's abstract of judgment to reflect the proper number of credits and forward the amended abstract to California's Department of Corrections and Rehabilitation.

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning of June 3, 2008, police responded to an alarm at a Best Buy store in Murrieta. Police found a large hole cut in a side steel door leading into the store that appeared to have been made by a torch. While investigating, Murrieta Police Officer Sean Waterman testified he heard some faint noises coming from a dirt wash area next to the store. Waterman saw a man nearby dressed in dark clothing and wearing a hooded sweatshirt pushing a shopping cart. After notifying his partner, Waterman approached the man.

As he approached, the man pushing the cart began walking faster. At that point, Waterman announced he was a police officer and ordered the man to stop. Instead, the man pushed the cart over the edge of the cement flood control channel and followed the cart down. A few seconds later, Waterman heard a crashing sound. Waterman looked down the steep walls of the flood control channel, saw the cart on its side with the contents spilled out onto the concrete floor and saw the man running towards the nearby I-15 freeway overpass.

Waterman testified he went down the steep walls of the channel and ordered the man to stop a second time, after again identifying himself as a police officer. As the man ran, Waterman clearly heard him yell, "I have a gun. I'll fucking shoot." Waterman stopped, drew his service revolver and shined a flashlight on the suspect who was about 50 yards away. Waterman also used his hand-held police radio to notify dispatch of the situation and what the suspect had yelled.

Waterman and his partner followed the fleeing suspect. Waterman's partner also heard the suspect threaten Waterman. The two officers methodically searched for the suspect, making sure to proceed slowly out of fear the suspect may try to shoot and kill them.

After searching the flood control channel, the officers came to an open field area where they saw a U-Haul van parked about 100 yards away. Waterman investigated and found the grill area of the van, near the hood, warm to the touch. Waterman surmised the van had been driven within the last hour.

At sunrise, Deputy Sheriff Daniel Tyler found an individual later identified as Cardwell on private property near the freeway. He was behind a fence looking through a pair of binoculars in the direction of the crime scene. When questioned, Cardwell told Deputy Tyler that he was looking at vehicles driving on the freeway. Cardwell also told Deputy Tyler he did not live at the residence on the property, and he had walked to the residence.

Cardwell was arrested and handcuffed. When told by officers he was under arrest for burglary, Cardwell said something to the effect of, "Fuck you, dumb ass cops" and tried to twist away from officers. At that point, officers tackled Cardwell to the ground.

A black shirt, flashlight, sweat suit, hat, belt, socks and a pair of gloves were found near where Cardwell was apprehended. Police also found by the fence a backpack containing a bolt cutter, a crowbar, a hatchet and a hacksaw. Also by the fence police found a blue ski mask.

During an inventory search of the van, police found a blue nylon bag with two gas canister tanks along with an acetylene base cutting torch, a crowbar

and packaging for a bolt cutter. Inside the cabin of the van police found a water bottle that was later found to have Cardwell's fingerprints on it. Police also determined the van had been rented by Cardwell.

The following day, an employee of a business near the Best Buy store discovered a bag in a concrete culvert containing clothes, shoes, gloves and a wallet. Inside the wallet was identification belonging to Cardwell.

Inside the vandalized Best Buy store police found that a locked camera cabinet had been pried open. Two shopping carts filled with cameras and video recorders from the store valued at about $24,600 were recovered in the drainage ditch, where the initial chase of the suspect had occurred. A surveillance camera inside the store showed an individual wearing a dark-colored hooded sweatshirt carrying a dark-colored backpack and holding a tool while pushing and pulling two shopping carts. The clothing and back-pack seen in the surveillance video were consistent with the items found on or near Cardwell when he was arrested.

Cardwell initially was charged in count 1 with burglary of the Best Buy store (§ 459), in count 2 with grand theft (§ 487, subd. (a)) and in count 3 with deterring an officer by threat or violence (§ 69). An amended felony complaint subsequently charged Cardwell in count 1 with burglary by use of an acetylene torch (§ 464) and left the remaining counts unchanged.

After a previous jury deadlocked and a mistrial was declared, Cardwell was convicted on all three counts. He subsequently admitted the prior strike conviction and the prison prior.

DISCUSSION

### A. *Burglary Conviction*

Cardwell claims his burglary conviction must be reversed because he did not use an acetylene torch to "open[] or attempt[] to open any vault, safe, *or other secure place*" (italics added) within the meaning of section 464 when he cut a hole in the exterior steel door of the Best Buy to gain entry into the store.

### 1. *Governing Law*

In construing a statute, our first task is to look to the words of the statute itself. " 'The Legislature's chosen language is the most reliable indicator of its intent because " 'it is the language of the statute itself that has successfully braved the legislative gauntlet.' " [Citation.] We give the words

of the statute "a plain and commonsense meaning" unless the statute specifically defines the words to give them a special meaning. [Citations.] If the statutory language is clear and unambiguous, our task is at an end, for there is no need for judicial construction. . . .

" 'Nevertheless, the "plain meaning" rule does not prevent a court from determining whether the literal meaning of the statute comports with its purpose. [Citations.] Thus, although the words used by the Legislature are the most useful guide to its intent, we do not view the language of the statute in isolation. [Citation.] Rather, we construe the words of the statute in context, keeping in mind the statutory purpose. [Citation.] We will not follow the plain meaning of the statute "when to do so would 'frustrate[] the manifest purposes of the legislation as a whole or [lead] to absurd results.' " [Citation.] Instead, we will " 'interpret legislation reasonably and . . . attempt to give effect to the apparent purpose of the statute.' " ' [Citation.]" (*People v. Nelson* (2011) 200 Cal.App.4th 1083, 1097–1098 [132 Cal.Rptr.3d 856].)

Because the issue presented is one of statutory interpretation and no conflicting extrinsic evidence was offered to aid in that interpretation, we employ an independent or de novo standard of review here. (See *People v. Green* (2011) 197 Cal.App.4th 1485, 1491–1492 [130 Cal.Rptr.3d 290]; see also *People v. Taylor* (1992) 6 Cal.App.4th 1084, 1090–1091 [8 Cal.Rptr.2d 439].)

We thus turn to the words of section 464. It provides: "Any person who, with intent to commit crime, enters, either by day or by night, any building, whether inhabited or not, and opens or attempts to open any vault, safe, or other secure place by use of acetylene torch or electric arc, burning bar, thermal lance, oxygen lance, or any other similar device capable of burning through steel, concrete, or any other solid substance, or by use of nitroglycerine, dynamite, gunpowder, or any other explosive, is guilty of a felony and, upon conviction, shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 for a term of three, five, or seven years."

### 2. Analysis

We agree with Cardwell that the phrase "other secure place" in section 464 does *not* include a defendant's use of an acetylene torch to gain entry into a locked or "secure" building. We note from the plain language of the statute that the words "vault, safe, or other secure place" are expressly conditioned on the fact a defendant (possessing the requisite criminal intent) already has entered a building (either by day or by night).

That is, for section 464 to be triggered, the defendant must be inside "any building" when the defendant "opens or attempts to open any vault, safe, or

other secure place" by means of a device listed in the statute. If the rule were otherwise, as the People suggest, and section 464 applied to a defendant's initial entry of the building using a device listed in the statute, the word "enters" in section 464 would be rendered mere surplusage. (See *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 799 [268 Cal.Rptr. 753, 789 P.2d 934] ["a construction that renders a word surplusage should be avoided"]; see also *People v. Woodhead* (1987) 43 Cal.3d 1002, 1010 [239 Cal.Rptr. 656, 741 P.2d 154] ["It is a settled axiom of statutory construction that significance should be attributed to every word and phrase of a statute, and a construction making some words surplusage should be avoided."].)[2]

In reaching our decision we recognize the Court of Appeal in *People v. Collins* (1969) 273 Cal.App.2d 1 [77 Cal.Rptr. 741] interpreted the phrase "other secure place" in section 464 to include a defendant's initial entry into a locked building by use of acetylene torch.

There, the defendants used an acetylene torch to cut a hole in the rear wall of a building. Once inside, the defendants attempted to gain access to a storeroom separated from the main building by using their torch to cut the lock on the storeroom door. Before the defendants could do so, however, they were apprehended by police after they tripped a silent alarm. The defendants ultimately were convicted of burglary in violation of section 464. (*People v. Collins, supra*, 273 Cal.App.2d at p. 3.)

On appeal, the defendants' primary contention was that the storeroom they entered by means of the acetylene torch was not a "vault, safe, or other secure place" within the meaning of section 464. (*People v. Collins, supra*, 273 Cal.App.2d at p. 4.) The Court of Appeal disagreed, noting the words "other secure place" were intended to have "some meaning": "If the Legislature had meant to prohibit the use of explosives on only vaults and safes, its addition of the language 'or other secure place' would amount to no more than an idle act, and the words would be mere surplusage. On the other hand, it should not be assumed that the Legislature was concerned with *any* secure place, such as a locked closet, or the words 'vault' and 'safe' would have been mere surplusage. Giving effect to both phrases, it must be concluded that the additional words 'other secure place' were intended to embrace some place

---

[2] Because we conclude that a defendant must be inside "any building" before section 464 is triggered, we deem it unnecessary to decide in this opinion what things or classes of things would satisfy the phrase "other secure place" in section 464. (See *People v. Valencia* (2011) 201 Cal.App.4th 922, 929 [136 Cal.Rptr.3d 25] [" 'observations by an appellate court are dicta and not precedent, unless a statement of law was "necessary to the decision, and therefore binding precedent[]." [Citation.]' "]; see also *People v. Arias* (2008) 45 Cal.4th 169, 180 [85 Cal.Rptr.3d 1, 195 P.3d 103] [under the rule of construction known as *ejusdem generis*, "when a particular class of things modifies general words, those general words are construed as applying only to things of the same nature or class as those enumerated."].)

different from a vault or safe, which place, like a vault or safe, was designed or used for the purpose of keeping therein valuables, but which lacks the substantial impenetrability characteristic of the commonly known, heavily protected and often armored vault or safe." (*Id.* at p. 5.)

■ The Court of Appeal in *People v. Collins* noted that its construction of the phrase "other secure place" was in accordance with the purpose behind section 464: "The gist of the offense proscribed by section 464 is the use or attempted use of explosives in the commission of a burglary, and for such use this section imposes the most severe penalty of the burglary statutes contained in the Penal Code. We ascertain that the primary purpose of section 464 is to discourage the burglar who, when confronted with a depository of substantial impenetrability, uses explosives, or an acetylene torch, to effect his [or her] entry. Such a method, unlike a burglary by circumventing locks, carries with it a substantial risk that human life will become endangered. [Citation.] [¶] In light of this construction, we conclude that what is a 'secure place' within section 464 is a question of fact for the court or jury below, and its determination must be upheld unless it can be said as a matter of law that the evidence is insufficient." (*People v. Collins, supra,* 273 Cal.App.2d at p. 5.)

We have no disagreement with this portion of the analysis in *People v. Collins.* However, the court next addressed the argument of defendants that to be guilty of violating section 464, they "must first have entered the building and *thereafter* opened or attempted to open the secure place by means of an acetylene torch." (*People v. Collins, supra,* 273 Cal.App.2d at p. 6.) In rejecting this argument, the court concluded: "The statute covers any person who enters a building *and* opens a secure place by use of an acetylene torch. No intent is indicated that one act shall precede the other; it is required only that both be committed. . . . Here, when defendants burned their way through the outer wall of the building they accomplished both an entry of the building and the opening of a secure place in the manner proscribed by section 464." (*Ibid.*)

■ For the reason provided *ante,* we disagree with the court in *People v. Collins* that a defendant's initial entry into a locked building using a device listed in section 464 violates this statute. Instead, section 464 unambiguously requires a defendant first be inside "any building" before using an acetylene torch (or similar device) to open or attempt to open a "vault, safe, *or other secure place*" within the meaning of section 464.

Our interpretation of section 464 actually supports the defendants' robbery convictions in *People v. Collins.* We note from the facts of *People v. Collins* that the defendants not only used an acetylene torch to gain access to the

storeroom, but *also* used the torch in an unsuccessful attempt to open what was described as a " 'metal-clad' " door that was secured by a " 'steel lock,' 'steel lock brackets' and a 'steel door stop' " that led to the main building where the merchandise was located. (*People v. Collins, supra*, 273 Cal.App.2d at p. 5.)

In light of those facts, it was unnecessary for the court in *People v. Collins* to conclude that the defendants' initial entry into a locked building by acetylene torch satisfied the words "other secure place" within the meaning of, and violated, section 464, inasmuch as the defendants, once inside the storeroom, *then* unsuccessfully "attempt[ed] to open" a "secure place"—the main building that was locked by the metal clad door—using a torch. Clearly, on these facts the defendants in *People v. Collins* were guilty of violating section 464 as we interpret that statute today.

█ In sum, we conclude Cardwell cannot be guilty of violating section 464 when he used an acetylene torch to cut a hole in the exterior door of Best Buy to gain access to the store because the statute unambiguously requires that a defendant first be inside "any building" and *then* use a device listed in the statute to open, or attempt to open, "any vault, safe, or other secure place." (§ 464.)[3]

B. *Remaining Issues*

Cardwell also claims the trial court erred when it failed to stay, pursuant to section 654, his concurrent sentence on count 2, grand theft, because the grand theft and burglary conviction in count 1 (which is now reversed) constituted a single course of conduct. As we previously noted, the People agree that counts 1 and 2 constituted a single course of conduct for purposes of section 654. In light of our conclusion on count 1, *if*, on remand, Cardwell is convicted of breaking into the Best Buy store, then in that instance the trial court should determine which count provides the "longest potential term of imprisonment" under section 654, subdivision (a) and sentence Cardwell accordingly.

Finally, Cardwell claims, and the People agree, that Cardwell is entitled to six additional days of conduct credits pursuant to section 4019.

---

[3] In light of our decision, we deem it unnecessary to address Cardwell's alternative contention that the trial court erred in failing sua sponte to instruct on the meaning of the words "other secure place" in section 464.

## DISPOSITION

Cardwell's burglary conviction in count 1 for violation of section 464 is reversed and remanded for resentence. In doing so, the trial court, pursuant to section 4019, is instructed to credit six additional days to Cardwell. In all other respects the judgment of conviction is affirmed.

Haller, J., and McIntyre, J., concurred.