[No. S108291. Mar. 29, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID WOODROW SMITH, Defendant and Appellant.

## COUNSEL

Tracy J. Dressner, under appointment by the Supreme Court, and Mark Ankcorn, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Donald E. De Nicola, Marc J. Nolan, Daniel Rogers and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KENNARD, J.**—Defendant, a convicted sex offender, is required to register with the police and tell them where he is living. (Pen. Code, § 290.)[1] He was charged with failure to register, in violation of section 290, subdivision (g), because he failed to inform the police of a change of address within five working days, as required by section 290, subdivision (f)(1). Defendant claimed he mailed the required notice, but the police did not receive it. After the trial court told the jury that a registered sex offender must see to it that the written notification of a change of address is actually received by the police, defendant was found guilty and sentenced to five years in prison.

We conclude that the trial court erred in instructing the jury that a registrant who mails a change-of-address notice within the statutory five-day period nevertheless violates section 290 if the police do not actually receive the notice. Under the circumstances here the error was prejudicial. We therefore reverse the judgment of the Court of Appeal affirming defendant's conviction.

### I

Defendant lived in Long Beach, California. He published an advertising newspaper, the Bixby Beat, with a circulation of about 10,000. On April 7, 1999, he told his readers in an editorial that he was selling the paper and moving east where his family lived.

Defendant testified that he moved from Long Beach to Boulder, Colorado, on April 10, 1999. He said that on April 12 he mailed a change-of-address card to Long Beach Detective James Newland. Defendant also mailed a change-of-address notice to the Long Beach Post Office. After a nine-day stay in Colorado, defendant moved to Port Jervis, New York, where his daughter lived. After arriving in New York he notified the California Department of Motor Vehicles and the California Franchise Tax Board of his new residence.

Detective Newland testified that he did not receive any notice from defendant and did not know that defendant had left California. On September 25, 1999, defendant was due for his annual reregistration as a sex offender. When defendant did not appear, Detective Newland tried to contact defendant but found defendant's Long Beach apartment vacant. Following up on various leads, Newland contacted Lieutenant Maryann Schultes of the police department in Port Jervis, New York. Officers from that police department took defendant into custody.

---

[1] Unless otherwise indicated, all statutory citations are to the Penal Code.

Lieutenant Schultes testified that during booking defendant told her he had left Long Beach on April 10, 1999, but had not notified authorities because he wanted "to start a new life." Defendant, however, claimed that he told Lieutenant Schultes that he mailed a change-of-address notice to the Long Beach Police. Defendant denied telling Schultes that he had not notified authorities because he wanted to start a new life.

The trial court instructed the jury: "In order to prove a violation of Penal Code section 290 and 290(f)(2) . . . the following elements must be proved: . . . [¶] That the person willfully and unlawfully failed to inform in writing the police agency with whom he was last registered of his change of address . . . within five working days of moving into any city or county or state." The court did not define the term "inform."

During its deliberations, the jury told the court that after six votes it was deadlocked with a seven-to-five split. According to the foreman, "we were pretty dead set on our answers." The court invited questions, and it conferred with counsel as to how to respond to the questions.

When the jury returned to the courtroom, Juror No. 7 said that one juror was interpreting the court's instructions to mean that it did not matter whether defendant sent a change-of-address notice to the Long Beach Police because "the fact it didn't get there meant there was no notification." Juror No. 7 inquired if it "was correct for that juror to interpret it that way." The court responded: "*It is the obligation of the person who has to register to see that written notification is received by the police department.*" (Italics added.) Juror No. 11 asked: "If it is his obligation, then why does 'willful' have anything to do with it?" The court replied: "Because it goes to knowledge of obligation. Let me give you an example. I don't think it would be fair for a person who has to register to walk down the street and see a police officer on patrol and throw a post card into that police officer's car and say, 'Here, that's all I have to do.' Would it? . . . So I don't think that's good enough. That's just an off the top of my head example, but the law is, I believe, that it is the obligation of the person who has to register . . . to see to it that there is receipt of the written notification of a change of address or a move out of the state." Juror No. 11 then asked: "[W]hy doesn't that just make him guilty then if they don't have it because he didn't check it out to make sure that they had received it? Why is there even a question here?" The court responded, "I think that's for you to decide."

After the jury retired, defense counsel put on the record his objection to the instruction that the defendant must prove receipt of the notice by the police agency. The trial court acknowledged that defense counsel "may be absolutely right," and it invited counsel to renew his objection if there was a

conviction. The jury returned a guilty verdict 20 minutes later. Defendant then renewed his objection in a motion for new trial. The trial court denied the motion and sentenced defendant to five years in prison.

## II

Section 290, subdivision (f)(1) states: "If any person who is required to register pursuant to this section changes his or her residence address or location, whether within the jurisdiction in which he or she is currently registered or to a new jurisdiction inside or outside the state, the person shall *inform*, in writing within five working days, the law enforcement agency or agencies with which he or she last registered of the new address or location." (Italics added.) Virtually identical language appears in three other statutes.[2] The issue here is whether the trial court erred in instructing the jury that this language imposes a duty on a registrant "to see to it that there is receipt of a written notification of a change of address." No previous case has addressed that issue, either as to section 290, subdivision (f)(1), or as to any of the other statutes using parallel wording.

The Attorney General contends that the phrase "shall inform" means that a registrant has a duty to ensure that the police actually receive the change-of-address form. Defendant, however, insists that a timely mailing is sufficient compliance.

In construing a statute, " 'we strive to ascertain and effectuate the Legislature's intent.' [Citations.] Because statutory language 'generally provide[s] the most reliable indicator' of that intent [citations], we turn to the words themselves, giving them their 'usual and ordinary meanings' and construing them in context . . . ." (*People v. Castenada* (2000) 23 Cal.4th 743, 746–747 [97 Cal.Rptr.2d 906, 3 P.3d 278].) "If the language contains no ambiguity, we presume the Legislature meant what it said, and the plain meaning of the statute governs." (*People v. Robles* (2000) 23 Cal.4th 1106, 1111 [99 Cal.Rptr.2d 120, 5 P.3d 176].) If, however, the statutory

---

[2] Section 186.30 requires a convicted gang member to register with the chief of police of the city of residence; section 186.32, subdivision (b) provides: "Within 10 days of changing his or her . . . address, any person subject to Section 186.30 shall inform, in writing, the law enforcement agency with whom he or she last registered of his or her new address." Section 457.1, subdivision (b)(1) requires a convicted arsonist to register with the law enforcement agency of the city where the person is residing; subdivision (g) states that if the registrant "changes his or her residence address, he or she shall inform, in writing within 10 days, the law enforcement agency with whom he or she last registered of his or her new address." Health and Safety Code section 11590, subdivision (a), requires specified convicted drug offenders to register; Health and Safety Code section 11594 then provides that if a registrant changes his or her residence, "he or she shall inform, in writing within 10 days, the law enforcement agency with whom he or she last registered of his or her new address."

language is susceptible of more than one reasonable construction, we can look to legislative history *(ibid.)* and to rules or maxims of construction *(Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74 P.3d 166]). "Finally, the court may consider the impact of an interpretation on public policy, for '[w]here uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.' " *(Ibid.,* quoting *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

Because both parties have advanced reasonable interpretations of section 290, subdivision (f)(1), and no legislative history illumines the matter, our decision in *People v. Franklin* (1999) 20 Cal.4th 249 [84 Cal.Rptr.2d 241, 975 P.2d 30] *(Franklin)* is apposite. There we construed an earlier version of section 290 that required a sex offender " '*while residing in California,* . . . to register . . . within 14 days of coming into any county [or] city . . . in which he . . . temporarily resides or is domiciled for that length of time.' " *(Franklin,* at p. 251, quoting former § 290, subd. (a)(1), italics added.) The issue was whether a defendant who moved from California to Texas had to notify California authorities of his change of residence. The Court of Appeal held that the statutory phrase "while residing in California" applied to a person moving from California to another state.

We reversed the Court of Appeal's judgment, explaining: "We disagree with the Court of Appeal's overly technical analysis. Initially, we note that failure to comply with California's sex offender registration law constitutes a penal offense. . . . That being so, the statute must be construed as favorably to the defendant as its language and the circumstances of its application reasonably may permit. [Citations.] [¶] This principle of favorable construction is especially apposite to registration statutes, which, to assure effective compliance, must give *clear notice* to all registrants of their responsibilities so that laypersons such as defendant can readily understand and properly discharge them." *(Franklin, supra,* 20 Cal.4th at p. 253, fn. omitted.)

Our opinion in *Franklin* continued: "[G]iven the limited application of section 290, former subdivision (a)(1), to offenders 'while residing in California,' its provisions were at least *ambiguous* regarding their application to persons, such as defendant, who move to another state. Certainly, a layperson such as defendant could reasonably assume that the 1995 version of the act did not apply to him once he left California. Accordingly, we must apply the

rule, discussed above, that any statutory ambiguities in a penal law ordinarily should be construed in the defendant's favor." (*Franklin, supra,* 20 Cal.4th at p. 255.)[3]

Following the reasoning of *Franklin*, which requires that registrants be given "clear notice" of their responsibilities, we inquire whether section 290, subdivision (f)(1) gave defendant "clear notice" that he had a duty to ensure that the police received a change-of-address notice within the five-day statutory period. The Attorney General argues that subdivision (f)(1) gives clear notice because it states that the registrant "shall inform" the police of his change of address, and "inform" implies that the police actually received the notice. We do not agree. Registrants would understand that they must use a form of written communication that is reasonably reliable. Mailing, however, is generally a reliable form of notice. Numerous statutes permit notice by mail. Evidence Code section 641 establishes a rebuttable presumption: "A letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail." This enactment demonstrates the Legislature's belief that ordinarily mailing is a reliable method of notifying the addressee.

Some statutes require more. Section 290, subdivision (a)(1)(A), for example, requires a sex offender to register personally with the chief of police of the city of residence. Subdivision (a)(1)(C) requires personal reregistration annually. Subdivision (f)(3) requires a registrant who changes his or her name to personally notify the law enforcement agency. Many other statutes expressly require certified mail. (See, e.g., §§ 246.1 [notice to owner of impounded vehicle], 626.2 [notice to college student of suspension or dismissal—certified or registered mail], 646.92 [notice to victim that person convicted of domestic violence has been released].)

■ No such requirements appear in section 290, subdivision (f)(1). The only requirement there is that the notice be in writing, which precludes telephone notice but not use of regular mail. Thus the registrant is not clearly informed that he must employ some method of delivery that will ensure that the notice is actually received by the law enforcement agency.

The Attorney General's theory that a defendant has not informed the police of his change of address until the police actually receive the change-of-address notice would largely nullify the Legislature's decision to give registrants five working days to notify the police. (See *Wright v. Superior Court*

---

[3] The pertinence of *Franklin* is not diminished by a later decision in *People v. Avery* (2002) 27 Cal.4th 49, 58 [115 Cal.Rptr.2d 403, 38 P.3d 1], where we said: "[A]lthough true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent." No contrary legislative intent could be discerned either here or in *Franklin*.

(1997) 15 Cal.4th 521, 530 [63 Cal.Rptr.2d 322, 936 P.2d 101].) If the act of "informing" the police is not complete until the police receive the change-of-address notice, the registrant would have to use a method of delivery that would guarantee delivery within the five days. Indeed, the registrant would have to choose a method that would ensure that the notice would be delivered to the police early in that five-day period, so that the registrant has time to learn whether the notice was received and, if it was not received, to send a second notice in time for it to be delivered within the five-day period. These strictures exclude delivery by any form of mail.

■ The Attorney General suggests that a registered sex offender could send the notice to the police by mail with a return receipt. It is doubtful, however, that this method would allow a defendant to learn of nondelivery and send a second notice in time for it to be received within the statutory five-day period. The Attorney General also suggests that a registrant sending a notice by ordinary mail telephone the police to learn if they received it. But by the time the registrant learned that his notice was not going to be delivered in the regular course of mail, insufficient time might remain for sending a second written communication that would arrive within the statutory period. Finally, the Attorney General suggests sending the notice by fax or e-mail, if the defendant is able to use those methods and the law enforcement agency is willing to accept notification in that form. But none of these methods of transmitting a change-of-address notice is mentioned in the statute itself. The language of the statute itself is insufficient to warn the registrant that he must resort to such special methods of delivery in order to avoid committing a felony.

We appreciate the Attorney General's concern that if we interpret subdivision (f)(1) to require only the mailing of notice within five days, a defendant who deliberately failed to send any notice might attempt to forestall his conviction by falsely claiming the notice was lost in the mail. But the statutory construction the Attorney General proposes—requiring the registrant to monitor the communication to make certain that it is received within the five-day period—is, for the reasons we have stated, neither fair nor workable. A better approach, we think, would be for the Legislature to amend the statute to provide "clear notice" (*Franklin, supra,* 20 Cal.4th at p. 253, italics omitted) that the registrant should use some method of mailing or electronic communication that (a) provides written proof of transmission and (b) will advise the registrant if the communication is not received.

■ We conclude that under section 290, subdivision (f)(1), a registered sex offender who mails a change-of-address notice to the police within five working days has fulfilled his statutory obligation. The statute does not give "clear notice" (*Franklin, supra,* 20 Cal.4th at p. 253) that the registrant has a

duty to see that the notification is actually received by the police, and therefore cannot be construed to impose such an obligation. The trial court thus erred in instructing the jury that defendant had an obligation to see that his change-of-address notice was received by the police department.

## III

Under the circumstances of this case, the trial court's instructional error was prejudicial. Defendant's only defense was that he had mailed the notice, but the court's erroneous instruction, responding to questions from a deadlocked jury, told the jurors that timely mailing was not a defense to the charge. After resuming deliberations, it took the jury only 20 minutes to transform a seven-to-five deadlock into a unanimous guilty verdict. As Justice Perluss observed in his dissenting opinion below, even though the evidence could justify the jury's disbelief of defendant's claim to have mailed a change-of-address notice to the Long Beach Police Department, it "blinks reality to deny that the erroneous instruction was the key to resolving the jury's impasse."

In arguing that any error was harmless, the Attorney General contends that only Jurors 7 and 11 asked questions that suggested they were confused about the statutory notification requirement, from which he infers that the other 10 jurors had no doubts. This inference is unreasonable; the silent jurors might have had the same doubts in mind, but found them resolved by the trial court's response to the questions asked by Jurors 7 and 11. The Attorney General also notes that Juror No. 7 said one juror thought the defendant had sent a change-of-address notice but that defendant would still be guilty if it was not received. From this statement the Attorney General infers that 11 jurors did not believe defendant had mailed a change-of-address notice. Again the inference is unreasonable; some jurors might have believed the card was sent and that defendant was innocent. This kind of speculation on the views of individual jurors is not fruitful, and overlooks that the jury was split 7-5, not 10-2 or 11-1.

The Attorney General also argues that the trial court's response to a question by Juror No. 11 cured any prejudice arising from the court's erroneous instruction that defendant must prove that the police actually received his change-of-address notice. As we noted earlier (*ante*, at p. 796), when the court told the jury that defendant had the burden of showing that the police actually received the change-of-address notice, Juror No. 11 inquired: "If this is his obligation, then why does 'willful' have anything to do with it?" The court replied, "Because it goes to knowledge of the obligation." The Attorney General theorizes that the jury would realize from the court's comment that defendant could not be convicted unless he knew he

had an obligation to ensure that his change-of-address notice was actually received by the police, and willfully failed to carry out that duty.

But the Attorney General's theory presupposes that section 290, subdivision (f)(1), imposed a duty on defendant to ensure that his change-of-address notice was received by the police, leaving it to the jury to decide whether defendant willfully violated that duty. Part II of this opinion, however, holds that subdivision (f)(1) does not impose such a duty. Thus if defendant mailed the notice within the statutory five-day period he is innocent regardless of whether he mistakenly thought he had a duty to make sure the police received his notice, and willfully failed to do so.

## IV

Defendant contends that California lacked jurisdiction to try him for a violation of section 290. We address this issue because a want of jurisdiction, unlike the trial court's instructional error discussed earlier, would preclude retrial of the charges.

Defendant's theory is that California has a general policy of applying its penal law only to crimes committed within the state, and that under this policy Penal Code section 290 was intended only to apply to California residents. (See *Franklin, supra,* 20 Cal.4th at p. 255; *id.* at p. 259 (dis. opn. of Brown, J.).) He does not contend that for California to apply section 290 to him would violate the United States Constitution.

Section 290, subdivision (f)(1), gives the registrant five working days after changing his residence in which to inform the police of his move; here the five-day period elapsed when defendant was in Colorado. But that fact does not bar application of California penal law.

Defendant's obligation to notify the police of his change of address was created by his conduct in California—the commission of crimes requiring registration as a sex offender. He cannot escape that obligation by moving to another jurisdiction. The case is conceptually no different from one in which a California resident moves to another state but retains an obligation to pay tax on California income (see Rev. & Tax Code, § 17041, subd. (b)), or to pay child support ordered by a California court (*People v. Jones* (1967) 257 Cal.App.2d 235 [64 Cal.Rptr. 622]). Persons who incur a legal obligation in California cannot escape prosecution for failure to perform that obligation on the ground that they are no longer California residents when performance is due.

## DISPOSITION

The judgment of the Court of Appeal is reversed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.