Filed 2/27/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>              v.<br><br>STEVEN R. SPRIGGS,<br><br>    Defendant and Appellant. | F066927<br><br>(Super. Ct. No. 002345)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jeffrey Bird, Commissioner.

McCormick, Barstow, Sheppard, Wayte & Carruth, Scott M. Reddie and Todd W. Baxter, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

While stopped in heavy traffic, Steven Spriggs pulled out his wireless telephone to check a map application for a way around the congestion.  A California Highway Patrol officer spotted him holding his telephone, pulled him over, and issued him a traffic

citation for violating Vehicle Code section 23123, subdivision (a), which prohibits drivers from "using a wireless telephone unless that telephone is specifically designed and configured to allow hands-free listening and talking, and is used in that manner while driving." Spriggs contends he did not violate the statute because he was not talking on the telephone. We agree. Based on the statute's language, its legislative history, and subsequent legislative enactments, we conclude that the statute means what it says – it prohibits a driver only from holding a wireless telephone while conversing on it. Consequently, we reverse his conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

After Spriggs was cited for violating Vehicle Code section 23123, subdivision (a) (hereafter section 23123(a)),[1] he contested the citation. At the trial held before a Fresno County Superior Court traffic commissioner, both Spriggs and the California Highway Patrol officer who issued the citation testified that Spriggs was cited for looking at a map on his cellular telephone while holding the telephone in his hand and driving. The traffic court commissioner subsequently found Spriggs guilty of violating section 23123(a) and ordered him to pay a $165 fine.

Spriggs appealed his conviction to the appellate division of the superior court. There he argued the only use of a wireless telephone section 23123(a) prohibits is listening and talking on the telephone if the telephone is being used in a manner that requires the driver to hold the telephone in his or her hand. Spriggs asserted the conduct for which he was cited was not a violation of section 23123(a) because he was not listening and talking on the telephone. The People did not file a brief or otherwise appear in connection with the appeal.

The appellate division affirmed Spriggs's conviction in *People v. Spriggs* (2013) 215 Cal.App.4th Supp. 1. The appellate division concluded, after reviewing the statute's

---

[1] Undesignated statutory references are to the Vehicle Code.

2.

plain language as well as its legislative history, that the statute was not "designed to prohibit hands-on use of a wireless telephone for conversation only," but instead was "specifically designed to prevent a driver from using a wireless telephone while driving unless the device is being used in a hands-free manner[,]" and "outlawed all 'hands-on' use of a wireless telephone while driving." (*People v. Spriggs*, *supra*, 215 Cal.App.4th at p. Supp. 5, 6-7.)

We subsequently granted review of the matter after the appellate division granted Spriggs's request for transfer certification to this court. We specifically asked the parties to address the following issue: "whether a person driving a motor vehicle, while holding a wireless telephone and looking at or checking a map application on the wireless telephone, violates Vehicle Code section 23123."

On appeal, Spriggs asserts the answer is no, as he was not "using" the wireless telephone within the meaning of the statute because the statute applies only if a driver is listening and talking on a wireless telephone that is not being used in a hands-free mode. The People contend the statute is much broader and applies to all uses of a wireless telephone unless the telephone is used in a hands-free manner.

We agree with Spriggs and conclude, pursuant to the rules of statutory interpretation, including our review of the language and legislative history of section 23123(a), that the Legislature intended the statute to only prohibit the use of a wireless telephone to engage in a conversation while driving unless the telephone is used in a hands-free manner. Therefore, we hold that Spriggs did not violate section 23123(a) and reverse the judgment.

## DISCUSSION

### 1. *The applicable principles of statutory construction are well-settled.*

The question we must decide, as an issue of first impression, is whether a person violates section 23123(a) by holding a wireless telephone in his or her hand and looking

3.

at a map application while driving.[2]  This involves statutory interpretation, which we review de novo.  (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724; *California Chamber of Commerce v. Brown* (2011) 196 Cal.App.4th 233, 248.)

The principles of statutory construction are clearly established.  "Our task is to discern the Legislature's intent.  The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context.  If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs.  On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction.  In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy."  (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190; *People v. Smith* (2004) 32 Cal.4th 792, 797-798.)  Moreover, "[r]eviewing courts may turn to the legislative history behind even unambiguous statutes when it confirms or bolsters their interpretation."  (*In re Gilbert R.* (2012) 211 Cal.App.4th 514, 519.)

"'To resolve [an] ambiguity, we rely upon well-settled rules.  "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible.  [Citation.]  Literal construction should not prevail if it

---

[2] The only published case concerning the scope of section 23123(a) is *People v. Nelson* (2011) 200 Cal.App.4th 1083 (*Nelson*).  That case addressed the issue of whether a driver's use of a wireless telephone while stopped at a red traffic light constitutes use while driving within the meaning of the statute.  (*Id.* at p. 1087.)  The appellate court rejected the defendant's argument that he was not driving because his car was stopped during his phone use and concluded the Legislature intended section 23123(a) "to apply to persons driving on our public roadways who, like defendant, may pause momentarily while doing so in order to comply with the rules of the road."  (*Nelson*, *supra*, 200 Cal.App.4th at p. 1087.)

4.

is contrary to the legislative intent apparent in the statute. . . . An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." [Citations.]' (*People v. Shabazz* (2006) 38 Cal.4th 55, 67–68; see also *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 903 [statutory language should not be interpreted in isolation, but must be construed in the context of the entire statute of which it is a part, in order to achieve harmony among the parts].) We must interpret a statute in accord with its legislative intent and where the Legislature expressly declares its intent, we must accept that declaration. (*Tyrone v. Kelley* (1973) 9 Cal.3d 1, 10–11.) Absurd or unjust results will never be ascribed to the Legislature, and a literal construction of a statute will not be followed if it is opposed to its legislative intent. (*Webster v. Superior Court* (1988) 46 Cal.3d 338, 344; *Lungren v. Deukmejian* [(1988)] 45 Cal.3d [727], 735.)" (*In re J.B.* (2009) 178 Cal.App.4th 751, 756.)

***2. Section 23123(a) is reasonably construed as only prohibiting a driver from holding a wireless telephone while conversing on it.***

### a. Statutory language

Section 23123(a) provides: "A person shall not drive a motor vehicle while using a wireless telephone unless that telephone is specifically designed and configured to allow hands-free listening and talking, and is used in that manner while driving." The statute does not define the word "using" or any other term contained therein.

Spriggs contends the statute is clear: "It applies if a person is listening or talking on a wireless telephone while driving and while the wireless telephone is not being used in hands-free mode." He asserts this interpretation is bolstered by the words "telephone" and "hands-free listening and talking[,]" which demonstrate the focus of the statute is on talking on the wireless telephone and not some other use of the telephone, such as looking at a map application.

5.

The People, however, assert the statute clearly prohibits the act of "using a wireless telephone" while driving and, since the word "using" is not ambiguous, it encompasses all uses of the telephone. According to the People, the statute "allows 'using' a wireless 'telephone while driving if the telephone is specifically designed and configured to allow hands-free listening and talking, and is used in that manner while driving.' Otherwise, using a wireless telephone while driving is prohibited." The People reason that, because under section 23123(a) a "driver may not *use* a cell phone unless it is used in a hands-free manner[,]" that section is violated when a driver holds a wireless telephone and looks at a map application while driving.

While the statute may be interpreted, on its face, as the People assert, we agree with Spriggs that the statute is reasonably construed as only prohibiting engaging in a conversation on a wireless telephone while driving and holding the telephone in one's hand. This is because the statute specifically states the telephone must be used in a manner that allows for "hands-free listening and talking." (§ 23123(a).) It does not state that it must be used in a manner that allows for hands-free looking, hands-free operation or hands-free use, or for anything other than listening and talking. Had the Legislature intended to prohibit drivers from holding the telephone and using it for all purposes, it would not have limited the telephone's required design and configuration to "hands-free listening and talking," but would have used broader language, such as "hands-free operation" or "hands-free use." To interpret section 23123(a) as applying to any use of a wireless telephone renders the "listening and talking" element nonsensical, as not all uses of a wireless telephone involve listening and talking, including looking at a map application.

The appellate division interpreted section 23123(a) as prohibiting all "hands-on use" of a wireless telephone based on its finding that the statute's plain language showed the "primary evil" the Legislature sought to avoid was "the distraction the driver faces when using his or her hands to operate the phone[,]" and "if the Legislature had intended

6.

to limit the application of the statute to 'conversing' or 'listening and talking,' as [Spriggs] maintains, it could have done so." (*People v. Spriggs*, *supra*, 215 Cal.App.4th at pp. Supp. 3-5.)  While the statute certainly could have been written more clearly, we believe the inclusion of the phrase "hands-free listening and talking" does in fact limit the statute's prohibition to engaging in a conversation while holding a wireless telephone.

### b.    *Legislative history*

The legislative history of section 23123(a) supports our interpretation.[3]  Section 23123 was enacted through Senate Bill No. 1613 (2005-2006 Reg. Sess.) as part of the California Wireless Telephone Automobile Safety Act of 2006 (the Act).  (Stats. 2006, ch. 290, § 1.)  A review of the legislative history of Senate Bill No. 1613 reveals that, while the Legislature was concerned about hand-held use of wireless telephones, this concern was addressed by prohibiting drivers from engaging in conversations while holding the telephone in one's hand rather than prohibiting all hand-held uses of the telephone.

As explained in both the Senate and Assembly analyses of the bill, two distractions arise when one uses a cell phone while driving: (1) "the physical distraction a motorist encounters when picking up the phone, punching the number keypad, holding the phone up to his or her ear to converse, or pushing a button to end a call"; and (2) "the mental distraction which results from the ongoing conversation carried on between the motorist and the person on the other end of the line."  (Sen. Com. on Transportation and Housing, Analysis of Sen. Bill No. 1613 (2005-2006 Reg. Sess.) version Feb. 24, 2006,

---

[3] On May 22, 2013, Spriggs filed a motion to take judicial notice of the legislative history of sections 23123(a) and 23123.5, as well as 23123.5's subsequent amendment, prepared by Legislative Intent Service, which he supplied with the motion.  We deferred ruling on the motion.  The People have not objected to the request, which we now grant. (Evid. Code, §§ 452, subd. (c), 459; *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544 & fn. 4; *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1350, fn. 3.)

pp.1-2; Assem. Com. on Transportation, Analysis of Sen. Bill No. 1613 (2005-2006 Reg. Sess.) as amended Jun. 20, 2006, p. 2.)[4]

According to these analyses, the bill addresses the first distraction, i.e. the physical distraction of placing a telephone call and holding the phone to one's ear to converse. (Sen. Com. on Transportation and Housing, Analysis of Sen. Bill No. 1613 (2005-2006 Reg. Sess.) version Feb. 24, 2006, pp.1-2; Assem. Com. on Transportation, Analysis of Sen. Bill No. 1613 (2005-2006 Reg. Sess.) as amended Jun. 20, 2006, p. 2.)[5]  There is no mention in the legislative history of trying to prevent distractions that arise from other uses of a wireless telephone when driving, such as looking at a map application while holding the telephone.

As explained in the legislative analyses, to address the physical distraction arising from the use of cell phones to place calls and carry on conversations, the bill's author, Senator Joseph Simitian, proposed what he believed to be a "minimal restriction on the use of cellular telephones in automobiles[,]" namely the hands-free requirement.  To minimize the burden imposed by this restriction, the author pointed out that "[h]ands-free cellular telephone equipment, or kits, are either given away with telephones or can be acquired as an after-market purchase for under $20.  Such equipment could be an earpiece, headset, speaker phone, or even Bluetooth technology."  (Assem. Com. on Transportation, Analysis of Sen. Bill No. 1613 (2005-2006 Reg. Sess.) as amended Jun. 20, 2006, p. 3; Sen. Com. on Transportation and Housing, Analysis of Sen. Bill No. 1613 (2005-2006 Reg. Sess.) version Feb. 24, 2006, p. 2.)

---

[4] See also Senate's Third Reading, Senate Bill No. 1613 (2005-2006 Reg. Sess.), as amended August 21, 2006, page 2, and Senate Rules Committee, Unfinished Business, Senate Bill No. 1613 (2005-2006 Reg. Sess.) as amended August 29, 2006, pages 6-7.

[5] See also Senate's Third Reading, Senate Bill No. 1613 (2005-2006 Reg. Sess.), as amended August 21, 2006, page 2, and Senate Rules Committee, Unfinished Business, Sen. Bill No. 1613 (2005-2006 Reg. Sess.) as amended August 29, 2006, pages 6-7.)

These excerpts show that, while the Legislature was concerned about hand-held use of wireless telephones, that concern arose only with respect to holding the telephone while engaging in a conversation. The Legislature's focus was on preventing drivers from holding a wireless telephone while speaking on it so the driver would have both hands free during the conversation. This is demonstrated by a reference in the Assembly Committee on Transportation's legislative analysis to the methods by which the hands-free requirement could be fulfilled, namely using an earpiece, headset, speaker phone or Bluetooth, all of which can be used only for hands-free listening and talking. (Assem. Com. on Transportation, Analysis of Sen. Bill No. 1613 (2005-2006 Reg. Sess.) as amended Jun. 20, 2006, p. 3.)

That the Legislature's focus was on holding a wireless telephone during a conversation is buttressed by the concerns raised in the Legislature about the bill, which pertain only to the mental distraction of talking on the telephone while driving rather than distractions that may arise from other uses of the telephone. As explained in the Senate Transportation and Housing Committee analysis, "The majority of evidence concerning distractedness and the use of cell phones indicates that the mental activity of holding a conversation, rather than the type of phone used for the conversation, leads to distractedness. The author contends that requiring motorists to use a hands-free phone while driving allows them to have two hands on the steering wheel, however, this bill does not require that two hands actually be placed on the wheel at any time while the driver is operating the car." (Sen. Com. on Transportation and Housing, Analysis of Sen. Bill No. 1613 (2005-2006 Reg. Sess.) version Feb. 24, 2006, pp. 3-4.) As commented in several analyses, "[a] central question posed by this bill is whether or not its enactment would significantly reduce the risk of distracted driving on our roadways. A driver's ability to maintain both hands on the steering wheel and eyes on the road while engaged in a phone conversation may or may not necessarily preclude a collision. But using a hand-held phone guarantees only one hand will be on the wheel." (Assem. Com. on

9.

Transportation, Analysis of Sen. Bill No. 1613 (2005-2006 Reg. Sess.) as amended Jun. 20, 2006, p. 4; Senate's Third Reading, Sen. Bill No. 1613 (2005-2006 Reg. Sess.), as amended Aug. 21, 2006, p. 5.)

Notably, many analyses of the bill contain reviews of studies on driving and wireless telephone use, all of which concern the distractedness created when conversing on the telephone while driving. These analyses note that the studies and data "indicate that drivers can lose substantial cognitive awareness with the situation on the road when they are concentrating on a cell phone conversation. This is true whether or not the motorist is holding the phone up to his or her ear or is using a hands-free system." (Sen. Com. on Transportation and Housing, Analysis of Sen. Bill No. 1613 (2005-2006 Reg. Sess.) version Feb. 24, 2006, pp. 2-3; Senate's Third Reading, Sen. Bill No. 1613 (2005-2006 Reg. Sess.), as amended Aug. 21, 2006, p. 3; Sen. Rules Com., Unfinished Business, Sen. Bill No. 1613 (2005-2006 Reg. Sess.) as amended Aug. 29, 2006, p. 4.) Significantly, no concerns were raised as to mental distractions that may arise from other uses of the wireless telephone while driving.

### c.    *Executive Branch actions*

Finally, statements from the executive branch, while not controlling, further confirm the law was intended to only prohibit holding wireless telephones during conversations. (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 934 & fn. 19 [finding enrolled bill reports prepared after a bill's passage instructive on matters of legislative intent]; *People v. Tanner* (1979) 24 Cal.3d 514, 520 [finding governor's press release on signing a bill instructive on matter of legislative intent].) As stated in the Department of Finance's analysis of the enrolled bill, the intent behind the law was to "improve traffic safety by eliminating the distraction of holding a cellular phone and engaging in a conversation while driving." (Dept. of Finance, Bill Analysis of Sen. Bill No. 1613 (2005-2006 Reg. Sess.) as amended Aug. 9, 2006, p. 2.) Moreover, in Governor

10.

Schwarzenegger's press release upon signing the bill, the Governor stated the "'simple fact is it's dangerous to talk on your cell phone while driving.'" The press release further commented: "Using a hands-free device while driving does not eliminate the distraction that comes with cell phones. Talking on the phone and dialing and hanging up the phone create a distraction. However, requiring drivers to use hands-free devices better ensures that drivers have two hands free to place on the wheel while driving." (Office of the Governor, Press Release, Sept. 15, 2006.)

### 3. The People's interpretation of section 23123(a) is not supported by the legislative history and would lead to absurd results.

The appellate division found the legislative history did not support the conclusion that section 23123(a) was intended to only prohibit holding a wireless telephone during a conversation. This finding was based on legislative statements that the bill's focus was on the distraction of using one's hands to operate a wireless telephone. From this, the appellate division reasoned that this distraction was present "whether the phone is used for carrying on a conversation or for some other purpose." (*People v. Spriggs, supra,* 215 Cal.App.4th at pp. Supp. 4-5.) But as we have explained, although the Legislature was concerned about the distraction caused by operating a wireless telephone while holding it, the Legislature's focus was on prohibiting holding the telephone only while carrying on a conversation, not while using it for any other purpose. This is not surprising, given that when the statute was enacted in 2006, most wireless telephones were just that – a telephone – rather than an electronic device with multiple functions.

While the People acknowledge statements in the legislative history regarding the concern about talking on wireless telephones, they assert the bill in its final form was intended to prohibit all hand-held telephone use. The People cite to the Legislature's findings and declarations that accompanied the bill's enactment, one of which states that "(d) there is a growing public concern regarding the safety implications of the widespread practice of using hand-held wireless telephones while operating motor vehicles." (Stats.

11.

2006, Reg. Sess. 2005-2006, ch. 290, § 2, (Sen. Bill No. 1613, 2 West's Cal. Session Laws 2006, p. 1954).) But the Legislature's other findings and declarations refer to the benefits of wireless telephone use, which involve, directly or indirectly, using such telephones for talking, not other uses.[6] Moreover, the legislative analyses cited above consistently discuss, throughout the bill's history, the concern of distractedness resulting from talking on a wireless telephone. There is no indication in any legislative analysis that the Legislature intended to broaden the prohibition of hand-held use to all uses of a wireless telephone.

The People's interpretation of section 23123(a) – that the statute bans all hand-held use of wireless telephones – would lead to absurd results and is opposed to the legislative intent. (*In re J.B.*, *supra*, 178 Cal.App.4th at p. 756 ["Absurd or unjust results will never be ascribed to the Legislature, and a literal construction of a statute will not be followed if it is opposed to its legislative intent."].) If the phrase "using a wireless

---

[6] Section 2 of the bill states in its entirety: "The Legislature finds and declares all of the following:

"(a) There are significant safety benefits associated with the availability of wireless communication technologies, including, but not limited to, providing assistance that helps save lives and minimizes property damage.

"(b) On a daily basis, California drivers make thousands of wireless telephone emergency 911 calls.

"(c) The availability of wireless telephones in motor vehicles allows motorists to report accidents, fires, naturally occurring life-threatening situations, including, but not limited to, rock slides and fallen trees, other dangerous road conditions, road rage, dangerous driving, criminal behavior, including drunk driving, and stranded motorist situations.

"(d) There is growing public concern regarding the safety implications of the widespread practice of using hand-held wireless telephones while operating motor vehicles.

"(e) It is in the best interests of the health and welfare of the citizens of the state to enact one uniform motor vehicle wireless telephone use law that establishes statewide safety guidelines for use of wireless telephones while operating a motor vehicle." (Stats. 2006, Reg. Sess. 2005-2006, ch. 290, § 2, (Sen. Bill No. 1613, 2 West's Cal. Session Laws 2006, p. 1954).)

telephone" includes all conceivable uses, then it would be a statutory violation for a driver to merely look at the telephone's display if the telephone was not designed and configured to allow hands-free listening and talking. It would also be a violation to hold the telephone in one's hand, even if configured for hands-free listening and talking, and look at the time or even merely move it for use as a paperweight. The People do not point to anything in the legislative history to suggest the Legislature intended such a broad prohibition. The People assert the statute would not be violated if a driver looked at a map application as long as the wireless telephone was mounted and the application was "activated using the phone's hand[s]-free capability." However, as Spriggs points out, under this scenario the statute could still be violated merely by looking at the map application on the wireless telephone if the telephone was not designed and configured to allow hands-free listening and talking.

When the legislative history of section 23123 is considered in conjunction with section 23123(a)'s language, it is apparent that the Legislature both understood and intended the statute be limited to only prohibit a driver from holding a wireless telephone while conversing on it. It did not intend to extend the prohibition to other uses of a wireless telephone and most certainly did not intend to prohibit the use at issue here, namely looking at a map application while holding the telephone and driving.

*4.      The Legislature's subsequent enactments of sections 23124 and 23123.5 confirm it intended section 23123(a) to only prohibit a driver from holding a wireless telephone while conversing on it.*

The Legislature's subsequent enactments pertaining to the use of wireless telephones and other electronic devices while driving confirm our conclusion. In 2007, the Legislature passed Senate Bill No. 33 (2007-2008 Reg. Sess.), which added section 23124 to the Vehicle Code. As explained in an analysis of the later-enacted adult text messaging ban (section 23123.5), section 23124 prohibits drivers under the age of 18 "from using a wireless telephone or other mobile service device even if used in a hands-

13.

free manner while operating a motor vehicle," including "talking, writing, sending, reading or using the internet, or any other function such a device may enable." (Sen. Com. on Transportation and Housing, Analysis of Sen. Bill No. 28, version Aug. 4, 2008, p. 1.)[7]

Thereafter, Senator Simitian, the author of Senate Bill Nos. 1613 and 33, introduced Senate Bill No. 28 (2008-2009 Reg. Sess.). (Sen. Com. on Transportation and Housing, Analysis of Sen. Bill No. 28, version Aug. 4, 2008, pp. 1-2.) The bill as passed in 2008 added section 23123.5 to the Vehicle Code, which prohibited driving "while using an electronic wireless communications device to write, send, or read a text-based communication." (Former § 23123.5, subd. (a); Stats. 2008, ch. 270 (S.B. 28), § 2.) Section 23123.5, subdivision (b) provides that, as used in that section, "'write, send, or read a text-based communication' means using an electronic wireless communications device to manually communicate with any person using a text-based communication, including, but not limited to, communications referred to as a text message, instant message, or electronic mail." The statute does not define the term "electronic wireless communication device." When enacted, section 23123.5 further provided that, for

_____

[7] When enacted, section 23124 prohibited minors from driving a motor vehicle "while using a wireless telephone, even if equipped with a hands-free device, or while using a mobile service device." (Former § 23124, subds. (a) & (b).) The statute defined a "mobile service device" as including, but not limited to, "a broadband personal communication device, specialized mobile radio device, handheld device or laptop computer with mobile data access, pager, and two-way messaging device." (Former § 23124, subd. (g).) The section became operative on July 1, 2008 – the same operative date as section 23123. (Former § 23124, subd. (h); former § 23123, subd. (g).)

In 2013, subdivision (b) of section 23124 was amended to prohibit minors from driving "while using a wireless telephone or an electronic wireless communications device, even if equipped with a hands-free device[,]" and replaced the phrase "mobile service device" in subdivision (g) with the term "electronic wireless communications device[,]" but left the definition of such devices identical with the prior version. (Stats. 2013, ch. 754, § 1.)

purposes of that section, "a person shall not be deemed to be writing, reading, or sending a text-based communication if the person reads, selects, or enters a telephone number or name in an electronic wireless communications device for the purpose of making or receiving a telephone call."  (Former § 23123.5, subd. (c).)

It was explained in one legislative analysis that Senate Bill No. 28 went "one step further" than section 23123(a), by "[p]rohibit[ing] a driver from using an electronic wireless communications device to write, send, or read a text-based communication[,]" and "essentially extends the teen ban on text messaging to all drivers, regardless of age." (Sen. Com. on Transportation and Housing, Analysis of Sen. Bill No. 28, version Aug. 4, 2008, pp. 1-2.)  As explained in one legislative document, "Drivers over the age of 18 are allowed to read, compose, and send text messages while driving.  This has been called a 'loophole' in the body of laws dealing with cell phone use while driving.  The intent of this bill is to make text messaging a primary offense for all drivers."  (Assem. Com. on Transportation, Background Information Request, Sen. Bill No. 28, p. 1.)  There would be no "loophole" for text messaging in section 23123(a), or need to extend the teen ban on text messaging, if section 23123(a) prohibited all hand-held use of wireless telephones.  As noted in the Senate Transportation and Housing Committee's analysis of Senate Bill No. 28, the bill "addresses an *additional* form of distracted driving[.]"  (Sen. Com. on Transportation and Housing, Analysis of Sen. Bill No. 28, version Aug. 4, 2008, p. 2 (italics added).)

The legislative history of section 23123.5 shows concerns were raised regarding law enforcement's ability to enforce the law, specifically the difficulty of being able to tell if a driver was engaged in a prohibited use, namely text messaging, or a permitted use, such as surfing the internet.  For example, internet usage was addressed in one analysis as follows:  "Wireless communications devices are increasingly capable of providing access to the internet.  Under this bill, a driver would be prohibited from sending a text message, but could use a hand-held device to surf the internet, a practice

15.

which may be as distracting as text messaging, if not more so.  Furthermore, allowing for internet usage may make it difficult for law enforcement officers to determine whether or not a driver is in fact violating the prohibition against texting or simply using the internet." (Sen. Com. on Transportation and Housing, Analysis of Sen. Bill No. 28, version Aug. 4, 2008, p. 2.)  In another analysis, it was noted that "while it [is] relatively easy for a law enforcement officer to see a driver holding a cell phone up to his or her ear in violation of current law, it may be much more difficult to determine whether or not a driver is composing, sending or reading a text message, since the device will be held away from the upper torso and is likely to be operated in one's lap."  (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 28 (2008-2009 Reg. Sess.), as amended Aug. 4, 2008, p. 1.)  That surfing the internet on a hand-held device was viewed as a permitted use of a wireless communications device implies that the Legislature did not believe such use was prohibited under section 23123(a); if it were prohibited, the analysis certainly would have said so.

Section 23123.5's exemption for reading, selecting or entering a "telephone number or name in an electronic wireless communications device for the purpose of making or receiving a telephone call" (§ 23123.5, subd. (c)), provides further support for the conclusion that section 23123(a) does not prohibit all hand-held uses of a wireless telephone.  If section 23123(a) prohibited all hand-held uses of a wireless telephone, the exemption would be unnecessary; however, the exemption was included because the Legislature wanted to ensure that a driver making or receiving a telephone call in compliance with section 23123(a) would not violate the texting statute, section 23123.5, when doing so.

Section 23123.5 was amended in 2012 to allow text messaging while driving with the use of voice-activated, hands-free devices by adding the following to subdivision (a), "unless the electronic wireless communications device is specifically designed and configured to allow voice-operated and hands-free operation to dictate, send, or listen to a

text-based communication, and it is used in that manner while driving." (Stats. 2012, ch. 92 (A.B. 1536), § 1.)[8] It also clarified that the texting statute is not violated by activating or deactivating a feature or function on an electronic wireless communications device by adding the following language to the end of subdivision (c): "or if a person otherwise activates of deactivates a feature or function on an electronic wireless communications device." (§ 23123.5, subd. (c).)

According to legislative analyses, the amendment to subdivision (c) of section 23123.5 was needed because "the predominant technology in use now typically requires that the driver physically touch a speaker phone or other wireless communication device (e.g., Bluetooth speaker) to initiate or end contact with the other party," which was a technical violation of existing law. (Assem. Com. on Transportation, Analysis of Assem. Bill No. 1536, as introduced Jan. 24, 2012, p. 1.) A "Fact Sheet" on the bill explained that its aim was to "clarify the use of hands-free devices while driving and still protecting the freedom to communicate," and "[u]nder current law it's illegal to physically touch your electronic device to initiate or end a call. AB 1536 will simply allow a driver to touch their device to use the necessary functions to make or receive a call and still be protected under the law." (Fact Sheet, AB 1536 (Miller), Hands-Free Devices.) If section 23123(a) prohibits all hand-held uses of wireless telephones, this amendment would be ineffective, as section 23123.5 would not be violated by touching a wireless communications device to initiate or receive calls on a wireless telephone, but such

---

[8] Section 23123.5, subdivision (a) now provides: "A person shall not drive a motor vehicle while using an electronic wireless communications device to write, send, or read a text-based communication, unless the electronic wireless communications device is specifically designed and configured to allow voice-operated and hands-free operation to dictate, send, or listen to a text-based communication and it is used in that manner while driving."

actions would violate section 23123(a). Such a result flies in the face of the expressed intent of ensuring such actions do not violate the law.

In sum, based on the legislative history of section 23123 and the statute's language, as well as the Legislature's subsequent enactments of sections 23123.5 and 23124, we conclude that section 23123(a) does not prohibit all hand-held uses of a wireless telephone. Instead, it prohibits "listening and talking" on the wireless telephone unless the telephone is used in a hands-free mode. Accordingly, Spriggs did not violate the statute when he held his cellular telephone in his hand and looked at a map application while driving and his conviction must be reversed.

## **DISPOSITION**

The judgment is reversed.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
KANE, J.


_____
DETJEN, J.

18.